*104
 
 PER CURIAM:
 

 Debtor Theatre Holding Corporation appeals from an order of Stewart, J. (S.D.N. Y.), which affirmed an order of Bankruptcy Judge Schwartzberg giving Theatre Holding 30 days to assume or reject its ground lease on 18 acres of land in Rockland County, New York. 11 U.S.C. § 365(d)(2) (Supp. IV 1980). We affirm for reasons which differ from those of the district court.
 

 The land holds the Nanuet Dinner Thea-tre, a one-story plus mezzanine and dome building made of masonry and steel which once sat more than 3,000 as a regular thea-tre and now sits 1,106 at 196 tables as a dinner theatre. The theatre and its parking lot cover 5.5 of the 18 acres at issue here. The Mauros, lessors and appellees, own the land but not the theatre. In 1973 they leased the land to Theatre Go Round, Ltd. for 22 years, with options to renew, at a rent starting at $57,500 per year during 1973-82, and rising with the consumer price index in 1983 and 1988. The lease provides that title to the theatre, in addition to possession of the land, reverts to the Mauros upon breach of the lease. Theatre Go Round in 1973 borrowed $1.8 million at 11 percent from three savings institutions. In return, Theatre Go Round granted a mortgage on the theatre and assigned the lease. Theatre Go Round defaulted in 1976. The institutions foreclosed in 1977, and set up Theatre Holding Corp. as a subsidiary to hold the lease. Theatre Holding subleased the property to Coachlight Dinner Theatre of Nanuet. Coachlight filed a Chapter 11 bankruptcy petition in January 1981. The-atre Holding filed its own Chapter 11 petition on May 14, 1981.
 

 Theatre Holding successfully contended in bankruptcy court that it was not in actual possession of the land and theatre and, therefore, did not have to pay the Mauros anything for use and occupancy. 2
 
 Collier on Bankruptcy
 
 ¶ 365.03[02] (L. King 15th Ed. 1981). As a Chapter 11 debtor, Theatre Holding owed the Mauros nothing until it either assumed the lease (in which case it would be liable thereunder) or rejected the lease (in which case it would be liable for breach). The Mauros moved under 11 U.S.C. § 365(d)(2) to require Theatre Holding to assume or reject by a date certain. Theatre Holding asked for 180 days. Bankruptcy Judge Schwartzberg at a hearing on June 27, 1981, gave Theatre Holding 30 days from that date to assume or reject. He subsequently extended the time to August 3. Theatre Holding appealed to the district court for more time and lost on January 18, 1982. This appeal was heard on May 7. We affirm. Our analysis shows that the passage of time has vitiated the debtor’s arguments.
 
 [1]
 

 Section 365(d)(1) requires the trustee of a debtor in Chapter 7 — liquidation— to assume or reject an executory contract or unexpired lease within 60 days of filing a petition. Paragraph (2) of the subsection, however, provides no time limit for reorganization cases but leaves the matter to the court:
 

 (2) In a case under chapter 9, 11 or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of the debtor at any time before the confirmation of a plan, but the court, on
 
 *105
 
 request of any party to such a contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.
 
 [2]
 

 Under the Bankruptcy Act of 1898, the trustee in reorganization proceedings or the debtor-in-possession had a reasonable time to decide whether to accept or reject an unexpired lease.
 
 Philadelphia Co. v. Dipple,
 
 312 U.S. 168, 174, 61 S.Ct. 538, 541, 85 L.Ed. 651 (1941);
 
 In re United Cigar Stores Co. of America,
 
 89 F.2d 3, 6 (2d Cir. 1937) (Swann, J.);
 
 In re Chicago Rapid Transit Co.,
 
 129 F.2d 1, 7 (7th Cir.),
 
 cert. denied,
 
 317 U.S. 683, 63 S.Ct. 205, 87 L.Ed. 547 (1942);
 
 In re Gulfco Investment Corp.,
 
 520 F.2d 741 (10th Cir. 1975). Cases under the 1898 Act remain good law under the new Code, because Congress considered, and rejected, changing then existing law by imposing time limits on reorganizing debtors. The first version of § 365(d)(2) would have provided:
 

 In a case under chapter [9 or 11] an executory contract or unexpired lease may be assumed at any time prior to the confirmation of a plan or in the plan, but [the court] upon request of any party to the lease or contract shall order the assumption or rejection by the trustee within a specified period of time,
 
 not exceeding thirty days,
 
 if further delay would result in prejudice to such a party.
 

 Report of the Commission on the Bankruptcy Laws of the United States,
 
 H.R. Doc. 93-137, 93d Cong., 1st Sess., Part II § 4— 602(a)(2) (1973) (emphasis added); introduced as H.R. 81, 94th Cong., 1st Sess. § 4r-602(a)(2) (1975) and S. 236, 94th Cong., 1st Sess. § 4-602(a)(2) (1975). Both houses of Congress dropped all references to a time limit and proposed the section in its present language in two later bills, H.R. 6, 95th Cong., 1st Sess. § 365(d)(2) (1977); S. 2266, 95th Cong., 1st Sess. § 365(d)(2) (1977). Therefore under the new Code, as under the old Act, the trustee or debtor in reorganization is allowed a reasonable time to decide whether to assume or reject.
 
 In re H & S Mfg. Inc.,
 
 13 Bankr. 692, 695 (Bankr.E.D.N.Y.1981); 2
 
 Collier on Bankruptcy
 
 ¶ 365.03[1] at 365-20.
 

 What constitutes a reasonable time is left to the bankruptcy court’s discretion in the light of the circumstances of each case.
 
 In re Flying W. Airways,
 
 328 F.Supp. 1256, 1258 (E.D.Pa.1971). This discretion should be informed by applicable law. First, cases from the 1898 Act remain relevant under the new Code. Second, § 365(d)(2) has pertinent legislative history. Finally, § 365(d)(2) must be construed in the context of the broad purposes of the entire Code.
 

 The bankruptcy court ruled from the bench, resting its decision primarily on the fact that Theatre Holding Corp. was not paying for use of the property even though it was trying to maintain its freedom to assume or reject the lease. The court said this state of affairs allowed the debtor to “have its cake and eat it too.”
 
 [3]
 

 The bankruptcy court might also have noted that the Mauros could in no event collect more than three years’ rent from Theatre Holding as a claim for breach of the lease upon its rejection, 11 U.S.C.
 
 *106
 
 § 502(b)(7). Thus the debtor’s continued occupation of the land, coupled with its failure to pay taxes, could damage the lessors beyond the compensation available under the Bankruptcy Code.
 

 On the other hand, the lease is Theatre Holding’s primary asset. Theatre Holding’s decision to assume or reject the lease would be central to any plan of reorganization in this Chapter 11 proceeding. In giving the debtor only 30 days to assume or reject, the bankruptcy court did not consider that Congress had rejected a 30-day limit in § 365(d)(2). In its decision, the bankruptcy court did not address prior case law, which held that “the right of receivers or trustees to a reasonable time is paramount to the lessor’s right to re-enter.”
 
 In re Chicago Rapid Transit Co.,
 
 129 F.2d 1, 7 (7th Cir. 1942). Under the old Act, the trustee’s right was paramount “in furtherance of what Congress has sought to achieve in Chapter XI, for unless a debtor has the leeway needed to appraise its financial situation and the potential value of its assets in terms of the formulation of a plan, the opportunity given by that Chapter would be frustrated.”
 
 In re Midtown Skating Corp.,
 
 3 Bankr. 194, 197 (Bankr.S.D.N.Y.1980).
 

 Congress reaffirmed the purposes of old Chapters X and XI in new Chapter 11.
 
 See In re Trainer’s, Inc.
 
 5 Coll.Bankr.Cas.2d 1623, 1625 (Bankr.E.D.Pa.1982) (Where debtor needs time to negotiate sale of main asset, additional time to formulate a plan of reorganization would be granted.). The new Chapter 11 gives debtors-in-possession control over the proceeding in its early months under 11 U.S.C. § 1121. Because the Mauros did not file a plan of their own under § 1121(c), or move to convert the proceedings to a liquidation under § 1112,
 
 [4]
 
 they left Theatre Holding with the exclusive right to file a plan of reorganization until September 11, 1981 — 120 days after the Chapter 11 petition was filed. 11 U.S.C. § 1121(b). The bankruptcy court did not consider § 1121 when it required Thea-tre Holding to make the central decision of its plan by August 3, 1981 — only 87 days after the petition was filed.
 

 Although the bankruptcy court’s allowance of only 30 days may have deprived Theatre Holding of the time it needed to formulate a plan, it is now a year after Theatre Holding filed its petition. It was apparent during the argument of the appeal that the debtor is no closer to composing a plan of reorganization despite the fact that it has actively sought a new tenant for the theatre throughout the appellate process. The debtor has had more than enough time to formulate a plan, and its failure even to suggest the outline of a reorganization makes it wholly inappropriate for us to take any action other than to end the matter by affirming.
 
 [5]
 
 Consequently, there is no need to decide whether the bankruptcy court abused its discretion in allowing only 30 days in which to assume or reject the lease.
 

 Affirmed.
 

 [1]
 

 . The Mauros contended that the passage of time mooted this appeal because the debtor has had all the time it originally asked for. We do
 
 not
 
 think this is
 
 correct
 
 because we do
 
 not
 
 believe the debtor could have accepted the lease while the case was on appeal once the August 3 deadline lapsed.
 

 A Chapter 7 debtor who does not assume or reject a lease within the 60-day deadline of § 365(d)(1) is presumed to have rejected the lease. Therefore a Chapter 11 debtor, whose deadline under § 365(d)(2) is set by the court, should be presumed to have rejected the lease upon failure to meet the deadline. Theatre Holding posted bond and obtained a stay while appealing this matter to the district court. It later failed to post additional bond to extend the stay while appealing to us. Theatre Holding wanted to extend its time to assume or reject the lease by applying for a stay, but it is clear both from the context of the hearing before Judge Schwartzberg and from statements made at oral argument that Judge Schwartz-berg merely stayed further proceedings in bankruptcy court while the case was on appeal. His stay did not extend the time to assume or reject the lease.
 

 [2]
 

 . Theatre Holding Corp. as debtor-in-possession has all the powers of a trustee. 11 U.S.C. § 1107(a).
 

 [3]
 

 . Theatre Holding argued that the Mauros would not be prejudiced if the period to assume or reject were longer, because the Mauros would either recover their losses (under 11 U.S.C. § 365(b)(1) (Supp. IV 1980)) if Theatre Holding were to assume the lease, or obtain as a “windfall” the title to the theatre building (under the termination provisions of the lease) if Theatre Holding were to reject the lease. Although a landlord’s reversionary interest in a building may, in some cases, be a factor that suggests that a ground lessee’s time to assume or reject should be extended, the bankruptcy court might have found that this was not the case here. Despite the appraised value of the building prior to the Coachlight sublease, it is not clear that gaining the building would result in a windfall, or even a substantial benefit, to the Mauros. Both of the tenants that have attempted to use the building as a theatre have failed. And Theatre Holding itself recognized that “[t]his property is unique. It is not a readily commercially viable property.” (Affidavit of Jessel Rothman dated July 13, 1981, at 1).
 

 [4]
 

 . Failure to meet court-ordered deadlines for filing a plan under § 1121 is one ground for conversion to Chapter 7. 11 U.S.C. § 1112(b)(4). However, failure of the debtor to file a plan during the 120 days in which he has the exclusive right to file a plan is not grounds for conversion because that time period is not a deadline, nor is it ordered by a court.
 
 See In re Manzey Land & Cattle Co.,
 
 5 Coll. Bankr, Cas.2d 1481, 1489-90 (Bankr.D.S.D.1982).
 

 [5]
 

 . The parties informed the court after oral argument that Theatre Holding converted the Chapter 11 to a Chapter 7 liquidation. Though Theatre Holding maintains it will seek to return to Chapter 11 if it wins here, its conversion further evidences the debtor’s inability to file a plan.