**In the Matter of THEATRE HOLDING CORP., Debtor.**

**Bankruptcy No. 81 B 20316.**

United States Bankruptcy Court, S. D. New York.

Sept. 3, 1982.

Coral, Ortenberg, Mayer, Zeck & Prier, P. C., Suffern, N. Y., for applicants.

Jessel Rothman, P. C., Mineola, N. Y., for debtor; Julian Kaplan, Mineola, N. Y., of counsel.

## DECISION ON NOTICE OF MOTION OF LANDLORDS SEEKING DAMAGES UNDER SUPERSEDEAS BOND.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

This is an action brought by the plaintiffs, Marcella Pincus Mauro, John E. Mauro and Paul Mauro for recovery of damages pursuant to a supersedeas bond filed by the debtor in connection with an appeal taken from this court's July 15, 1981 order which required the debtor to assume or reject its unexpired lease with the Mauros (hereinafter "the landlords") on or before August 3, 1981. The debtor's appeal was unsuccessful and the landlords seek compensation for losses claimed to have been sustained dur-

ing the operative period of the stay. The debtor reasons that any losses suffered by the landlords cannot be attributed solely to the imposition of the stay and thus are not recoverable under the supersedeas bond. Thus, this court must determine whether the landlords in fact sustained damages which are directly related to the delay occasioned by the imposition of the stay pending appeal.

## BACKGROUND

The debtor, Theatre Holding Corp., was a tenant under a lease entered into in 1977 with the plaintiffs. There were four amendments to the lease, the last of which was executed in 1980 and provided for rental payments of $4,791.67 per month for the period running from September 1, 1979 through December 31, 1982, plus additional payments of $1,456.17 per month towards deferred rent of $104,843.83 which had accrued but remained unpaid as of September 1, 1979. The deferred rent was to be paid in 72 equal monthly installments commencing September 1, 1979 until the aggregate amount of the deferred rent was paid in full. The debtor made the required payments through April, 1981, but shortly thereafter, on May 15, 1981, the debtor filed a voluntary Chapter 11 petition pursuant to the Bankruptcy Reform Act of 1978, Code § 1101 et seq.[1] The debtor's subtenant, Coachlight Properties, had previously filed its own petition for relief under Chapter 11 on April 22, 1981.

In June, 1981, the landlords applied to this court pursuant to Bankruptcy Code § 365(d)(2) for an order fixing the time for the debtor to either assume or reject the unexpired lease. On July 15, 1981 an order was entered requiring the debtor to assume or reject on or before August 3, 1981.

The debtor filed an appeal from the July 15, 1981 order and moved this court for a stay of the order pending appeal. On Au-

gust 3, 1981, the debtor's motion for a stay was granted on the condition that the debtor post a supersedeas bond in the amount of $70,000 to secure the landlord against any damages which might be sustained as a result of the stay. The debtor then posted the bond in the required amount.

The district court affirmed this court's order on January 18, 1982.[2] The debtor then sought a stay of the district court order which was granted on March 3, 1982 on the condition that the debtor obtain an additional bond in the amount of $137,-140.00. The debtor moved the Court of Appeals to stay the enforcement of the March 3 order, which was denied. On April 19, 1982 the district court vacated its March 3 order that had stayed its January 18 affirmance, as the debtor had not complied with the additional bond requirement.[3] Therefore, as of April 19, 1982 there was no longer any stay operating against this court's July 15, 1981 order requiring the debtor to assume or reject the lease by August 3, 1981.

Accordingly, the landlords have now moved this court in connection with the supersedeas bond filed by the debtor, for an assessment and award of damages that they contend were incurred during the operative period of the stay, i.e., August 3, 1981 through April 19, 1982.

## DISCUSSION

■ Bankruptcy Rule 805 empowers the bankruptcy court to grant a stay of an order upon the posting of a supersedeas bond "upon such terms as will protect the rights of all parties in interest." The purpose of filing a supersedeas bond in a bankruptcy court is to indemnify the party prevailing in the original action against loss caused by an unsuccessful attempt to reverse the holding of the bankruptcy court. However, the only compensable damages

---

1. The debtor converted to a Chapter 7 liquidation on May 17, 1982.

2. *In re Theatre Holding Corp.*, 17 B.R. 430 (D.C. S.D.N.Y.1982).

3. Meanwhile, the debtor had appealed the district court's January 18, 1982 decision which was ultimately affirmed on June 1, 1982 by the Court of Appeals: *In re Theatre Holding Corp.*, 681 F.2d 102 (2d Cir. 1982).

are those which are shown to be the "natural and proximate" result of the stay. *Weiner v. 222 East Chestnut Corp.*, 303 F.2d 630, 634 (7th Cir. 1962); *Moore v. Townsend*, 577 F.2d 424 (7th Cir. 1978); *Crane v. Buckley*, 203 U.S. 441, 27 S.Ct. 56, 51 L.Ed. 260 (1906); *Kountze v. Omaha Hotel Co.*, 107 U.S. 378, 2 S.Ct. 911, 27 L.Ed. 609 (1882).

The debtor posted a supersedeas bond in the amount of $70,000 for the express purpose of covering damages sustained by the landlords as a result of staying this court's July 15, 1981 order. The landlords assert that the damages should be measured by the monthly rent reserved under the terms of the lease together with the outstanding state, county and school taxes. Thus, the issue presented is whether the asserted damages were in fact attributable to the imposition of the stay and the ensuing appeal process.

## DAMAGES MEASURED BY RENT

Under the terms of the unexpired lease with the landlords, the debtor was liable for rent and deferred rent at the rate of $4,791.67 and $1,456.17 per month, respectively. Thus, the landlords assert that their damages should be measured by the aggregate monthly payment of $6247.84 multiplied by the 8½ months which passed during the August 3, 1981 to April 19, 1982 interval.[4] In addition, the debtor was liable for unpaid taxes and assessments which accrued during the same period at approximately $7,600 per month. The landlords argue that the combined rental and taxes exceed the coverage of the bond so that the entire $70,000 bond should be turned over to them to compensate their losses.

■ In the Second Circuit decision which affirmed the ruling requiring the debtor to assume or reject the lease on or before August 3, 1981,[5] the Court stated in footnote # 1, that "a Chapter 11 debtor, whose deadline under § 365(d)(2) is set by the court, *should be deemed to have rejected the lease upon failure to meet the deadline.*" (Emphasis added). Thus, the lease was deemed rejected as of August 3, 1981. The landlords have no right to demand rental payments after August 3 since the lease was no longer binding after the rejection. Similarly, the bond could not be used for recovery of taxes due under a rejected lease for the period after August 3, 1981. The loss suffered by the landlord for rent and taxes after that date was not attributable to the stay; it was caused by the debtor's rejection of the lease. The landlords' recourse is to file a claim against the debtor's estate for lost rent.

When a debtor rejects a lease as a tenant, the rejection constitutes a breach of the lease as if it occurred immediately before the date of the filing of the petition. Bankruptcy Code § 365(g)(1). A claim arising from the rejection under § 365 of an unexpired lease that has not been previously assumed is allowed as if the claim had arisen before the date of the filing of the petition. Code § 502(g). Pursuant to the limitation in Code § 502(b)(7), a landlord's claim for unpaid rent may not exceed three years of future rent, measured from the earlier of the petition date (in this case, May 15, 1981) or the date the lessor regains control of the leased property, plus any unpaid rent due on the earlier of such dates. Thus, the landlords can obtain compensation for loss due to the rejection and breach of the unexpired lease by filing a claim in accordance with the pertinent Code provisions. Accordingly, the landlords may not use the bond as an indirect substitute for rent and tax payments that they are not entitled to directly for the period between August 3, 1981 and April 19, 1982.

## DAMAGES MEASURED BY USE AND OCCUPANCY

A common valuation of recovery under a supersedeas bond to compensate a landlord

---

**4.** August 3, 1981 is the date when this court imposed a stay on its July 15, 1981 order which had required the debtor to assume or reject its lease by August 3. April 19, 1982 is the date when that stay was vacated. (See discussion under Background, *supra* ).

**5.** See footnote # 3, *supra.*

for delay in recovering the premises from a tenant due to the imposition of a stay pending appeal is the reasonable value of the use and occupancy of the premises, measured by the rent reserved in the lease. See, *Atlas v. Fidelity & Casualty Co. of N. Y.*, 124 N.Y.S.2d 478 (Sup.Ct.1953); *Kespert v. Union Indemnity Co.*, 198 N.Y.S. 532 (Sup. Ct., App. Tm 1923).

■ However, these cases usually involve a tenant who remains in possession of the premises during the pendency of the appeal. The unusual factor in this case is that this court has already determined during a hearing in this matter held on July 15, 1981 that since the debtor was not in possession of the premises, it was not liable for use and occupation. *Meehan v. King*, 54 F.2d 761 (1st Cir. 1932); *In re United Cigar Stores Co. of America*, 69 F.2d 513 (2d Cir. 1934); *2 Collier on Bankruptcy* ¶ 365.03[2] (15th Ed. 1981). It was the debtor's subtenant, Coachlight Properties, that had been in possession of the premises; when Coachlight vacated the building, the debtor never retook possession. The landlords cite *In re Chase Commissary Corporation*, 11 F.Supp. 288 (D.C.S.D.N.Y.1935) to support their contention that when the debtor rejects a lease, the estate is liable for the period of the debtor's use and occupation on a reasonable basis. This case is inapposite for two reasons. Firstly, that case concerned the debtor's liability for rent upon its rejection of a lease; it did not address the issue of damages under a supersedeas bond. Secondly, the tenant in *Chase Commissary, supra*, was in possession of the premises, which is not true in the instant case. If the debtor was not in possession of the premises and was not liable for use and occupancy, then the stay of this court's order could not be the cause of damage to the landlords, since with or without a stay, the landlords had no right to receive use and occupancy.

Accordingly, the reasonable value of the use and occupation of the premises is not a proper measure of damages under the bond.

## OTHER DAMAGES

■ The landlords had no access to the premises in question during the effective period of the stay pending appeal. However, they have not shown any proof of any damages suffered *because of the stay* during the period between August 3, 1981 and April 19, 1982 to support their motion to recover on the bond. As stated in *John Hancock Mut. Life Ins. Co. v. Hurley*, 151 F.2d 751, 755 (1st Cir. 1945),

"[t]he extent of the damages becomes a matter to be proved in the district court when liability on the supersedeas bond is sought to be enforced after remand from the appellate court. It may often be necessary to establish the amount of such damages by evidence, as, for instance, in *Woodworth v. Northwestern Mutual Life Ins. Co.*, 1902, 185 U.S., 354, 22 S.Ct. 676, 46 L.Ed. 945; . . . ."

The landlord has not offered any proof of negotiations for a new lease with other parties that were jeopardized because of a shadow cast by the stay and the ensuing appeal. At page four of the memorandum of law filed on behalf of the landlord on August 2, 1982 it states:

"It requires no great amount of discussion or argument to prove that during the time the landlords were stayed from proceeding to terminate the lease, they were damaged. There was nothing they could do about reletting or selling the premises. Common sense would dictate that no one would invest in a lease and be uncertain as to whether it was valid. No landlord would grant a lease hold estate knowing that it might be ineffective because of a prior lease hold estate and thereby become subject to damages."

This explanation cannot suffice as proof of damages sustained during the period in question. The landlords have not produced any disappointed lessee who had been ready, willing and able to lease the premises but for the complications arising from the appeal. The landlords must demonstrate that lease negotiations failed solely because of the delay caused by the stay pending appeal in order to sustain the burden of proving lost rental income from another source. The landlords appear to have made

no effort to secure another tenant, urging this court to accept as an explanation a presupposed unwillingness to bargain on the part of all possible lessees and purchasers. Conditional negotiations might have been arranged, with funds held in escrow and appropriate provisions made to protect the rights of all concerned in the event of a successful appeal for the debtor. Such an arrangement would appear reasonable in light of the fact that the subject property is so unique that a prospective lessee or purchaser could not easily find a similar opportunity.

Furthermore, notwithstanding that the stay of this court's July 15, 1981 order was vacated on April 19, 1982, at which time the landlords legally had access to the premises, there is no evidence of fruitful negotiations taking place since that time, or since the June 1, 1982 Court of Appeals affirmance,[6] that would lend credence to the landlords' position that during the operative period of the stay potential investors were made wary because of the appeal.

Even if the landlords could demonstrate that promising offers evaporated, there must be proof that these negotiations were not consummated because of the appeal, rather than because of a disagreement over terms of the bargain. Moreover, there is no proof that the new lessee would have agreed to the identical rental terms that the landlords enjoyed with the debtor, which undermines an argument for lost rent calculated at the rate set forth in the rejected lease.

There has been no evidence presented relating to any physical damage to, or deterioration of, the premises that occurred during the operative period of the stay in which the landlords were denied access to the premises.

In short, there must be affirmative proof of actual damages, not merely presumed damages due to the imposition of the stay. The landlords may not be permitted to use the supersedeas bond as a substitute for rent or use and occupancy when no direct connection has been made between the de-

lay in recovering the premises during the appeal process and the purported damages.

Accordingly, the landlords have not established entitlement to any damages under the supersedeas bond.

The bond shall be returned to the possession of the debtor.

SUBMIT ORDER accordingly.