**In re CONCERT ARTS SOCIETY, INC., Debtor.**

**Bankruptcy No. 84 B 10080 (PBA).**

United States Bankruptcy Court, S.D. New York.

March 14, 1983.

Felix J. Ziobert, New York City, for Concert Arts Soc., Inc.

Richard E. Weltman, New York City, for 50/50 Productions, Inc. and Steve Martin.

Finklestein, Borah, Schwartz, Altschuler & Goldstein, P.C., New York City for Beacway Operating Corp.; Steven W. Stutman, New York City, of counsel.

## MEMORANDUM DECISION

PRUDENCE B. ABRAM, Bankruptcy Judge:

Concert Arts Society, Inc., ("Debtor") filed a petition for reorganization under Chapter 11 of the Bankruptcy Code on January 20, 1984 and is now operating as a debtor in possession. In 1982 Beacway Operating Corp. ("Beacway") instituted an action in the Civil Court of New York, County of New York, Landlord and Tenant Part, Index No. L & T 102539/82 (the "Civil Court Action"), against the Debtor and 50/50 Productions, Inc. On December 30, 1983, the Honorable Lewis Friedman issued a judgment in the Civil Court Action finding that the Debtor as tenant under a lease for the Beacon Theater located at Broadway and 75th Street, Manhattan, had breached the lease by entering into a management agreement with 50/50 Productions ("50/50") on October 6, 1981 and that the lease had been duly terminated by no-

tice given by Beacway.[1] Judge Friedman directed that a hearing be held to determine the amount of use and occupancy and the length of the stay of enforcement of the warrant of eviction which would be appropriate. An appeal has been taken from Judge Friedman's decision. Although that appeal was argued on March 5, it is uncertain when it might be decided, particularly since Judge Friedman relied on *Mann Theatres Corp. of Cal. v. Mid-Island Shopping Plaza Co.*, 94 A.D.2d 466, 464 N.Y.S.2d 793 (2d Dept.1983), the appeal of which is scheduled to be argued in the Court of Appeals sometime this spring.

In mid-January a week-long trial was had before the Honorable Robert D. Lippmann on the use and occupation and stay issues. That trial concluded in the afternoon of January 20, the date the Debtor filed its Chapter 11 petition. No decision has yet been entered by Judge Lippmann due to the circumstances created by the Debtor's Chapter 11 filing and the interposition of the automatic stay provided by Bankruptcy Code § 362, 11 U.S.C. § 362. Some courts have found that the § 362 stay prohibits their issuance of a decision. *See e.g., Ellison v. Northwest Engineering Company*, 707 F.2d 1310, 11 B.C.D. 401 (11th Cir.1983). Whether the § 362 stay bars the issuance of the decision or not, it certainly is appropriate in light of the purposes of the § 362 stay and the Bankruptcy Code for a court to withhold its decision unless and until one of the parties to the litigation secures a modification of the § 362 stay from the Bankruptcy Court.

All parties, including the Debtor, have continued to prosecute the appeal from the December 30, 1983 decision in the Civil Court Action. Notwithstanding this, the Debtor has filed an application dated January 30, 1984 for leave to remove the Civil Court Action to the Bankruptcy Court. Beacway cross-moved under date of February 17, 1984 to have the action remanded to the Civil Court. Previously by application dated January 31, 1984, Beacway sought an order vacating the § 362 stay for cause, directing Concert Arts to vacate the Beacon Theatre, and directing the payment of use and occupancy since the January 20 filing of the Chapter 11 petition. The Debtor cross-moved in response to Beacway's January 31 application "for an order for adequate protection of Beacway Operating Corp., and compliance therewith by 50/50 Productions * * *." 50/50 has opposed this request by the Debtor.[2]

Since the filing of this Chapter 11 petition, possession of the Beacon Theater has been held adversely to Concert Arts by 50/50.[3] Concert Arts has made various motions in this court directed at obtaining possession of the Beacon Theater from 50/50.[4] The court has also been informed

---

1. Judge Friedman's decision makes no reference to a *Yellowstone* injunction and this court assumes that no such injunction was obtained in the state court litigation. Thus, this court has assumed that Concert Arts, as the tenant, would have no opportunity to cure any defaults and the lease would be deemed to have expired by its own terms if a finding of a properly noticed default is made.

   The Civil Court Action also involves a allegation that the lease was properly terminated for failure to make certain repairs. Should the December 30 judgment be reversed, a trial would have to be held on this issue.

2. 50/50's motion includes other requests but the court does not find it necessary to detail them in connection with this decision beyond noting that 50/50 seeks leave to pursue various actions against the Debtor and others in a non-bankruptcy forum.

3. Since the management agreement was entered into in October 1981, it would appear that 50/50 has had control and possession of the Beacon Theater except for a short period in December 1983 and January 1984. Concert Arts ousted 50/50 from possession at some point in late December in a manner not of record in this court and Concert Arts was in turn ousted by 50/50 in a manner unknown to this court in January before this Chapter 11 petition was filed.

4. The motions other than those previously enumerated are an application dated January 25, 1984 for appointment of a trustee, made apparently under the mistaken apprehension that a trustee would be entitled, as of right, to an immediate turnover of the Beacon Theater from 50/50. This motion has been effectively withdrawn. Another application dated January 26, 1984 seeks a turnover by 50/50 and Steve Martin of the Beacon Theater as well as monies

by the parties that litigation seeking similar relief is being pursued in the state courts. However, the court does not know the status of those matters or their exact nature nor has this court been supplied with any of the pleadings in those actions.

As a result of the January 26 motion made by Concert Arts, this court directed 50/50 to permit the Debtor the use of the Beacon Theater in early February as a business invitee for two performances of the Noh-Kyogen National Theater of Japan. The court has also directed, following a hearing on yet another application of Concert Arts, this one dated February 10, 1984,[5] pursuant to a stipulation between 50/50 and Concert Arts arrived at after several hearings before this court, that Concert Arts again be a business invitee for agreed times during the period March 19 through 26 for a production by the New Vic Theater of London.

These uses of the Beacon Theater by Concert Arts were stipulated to and ordered on the basis of an apparent right by Concert Arts under its management agreement with 50/50 to use the Beacon Theater for its international cultural program. Because of the multiplicity of pending litigations and motions, the court's directions with respect to Concert Arts' use of the Beacon Theater were a pragmatic form of interim relief to deal with an immediate

business problem based on this court's equitable powers. This interim relief was granted without prejudice to all of the parties' positions as to their respective legal rights and positions.

The multiplicity of motions detailed above are directed at two central issues. The first is the question of which forum the dispute between the landlord and the debtor-tenant over the termination of the lease should be pursued in. The second issue is that of payment of use and occupancy.

■ Turning to the first question, this court is of the view that the litigation should be pursued in the non-bankruptcy forum in which it began. To the extent that removal of the Civil Court Action may have been effected, this court remands it pursuant to 28 U.S.C. § 1478 because (a) this court cannot act as, in effect, an appellate court to review Judge Friedman's decision; (b) Concert Arts' property right in the Beacon Theater lease is limited to its rights under state law, which means that the outcome of the Civil Court Action will determine whether the lease has been terminated or not;[6] (c) all parties, including the Debtor, are continuing to pursue the matter in the nonbankruptcy court forum; and (d) the matter appears to involve an unsettled issue of state law; and (e) this court

alleged to be held in constructive trust for Concert Arts and certain box office receipts. Although the major substantive issues of this application remain untried at this date, this application did request relief with respect to the Noh-Kyogen production which was granted as discussed later in this opinion.

5. The multiplicity of motions generated in this case in its brief sojourn in the Bankruptcy Court has caused this court to have great empathy with the remarks of Judge Friedman in his December 30 decision in the Civil Court Action:

"These motions present an example of how ingenious counsel can turn simple issues into a quagmire of litigation which benefits only counsel and their fees. The 5¾" of paper submitted to me show that delay and multiple papers only obfuscate the issues." Opinion at 1.

6. Both Beacway and 50/50 are in error in arguing that cause for vacation of the § 362 stay exists on the grounds that Concert Arts has no

property interest in the Beacon Theater lease at this time. No warrant of eviction has yet issued. New York law is clear that it is the issuance and execution of the warrant of eviction which finally terminates the landlord-tenant relationship. See N.Y. Real Prop. Actions and Proceedings § 749(3) (McKinney's, 1979). Their positions also ignore Concert Arts' right of appeal. Until the December 30 judgment becomes final and non-appealable, Concert Arts has a cognizable legal interest in the lease and the demised premises.

"If the termination of a lease has not been completed, or if it can be reversed by application of state procedures (so that the matter is *sub judice*), the trustee or debtor in possession may still assume such rights and pursue them." *In re GSVC Restaurant Corp.*, 10 B.R. 300 (D.C.S.D.N.Y.1980).

See also *In re KDT Industries, Inc.*, 32 B.R. 852, 856 (Bkrtcy.S.D.N.Y.1983).

can prevent any thwarting of the intent and purposes of the Bankruptcy Code in the future by means of its power to modify further or refuse to modify further the automatic stay contained in Bankruptcy Code § 362, or otherwise act to protect its jurisdiction pursuant to Bankruptcy Code § 105.

This court entertains serious doubts, in any event, that the Civil Court Action has been removed to this court. Rule 9027 of the Rules of Bankruptcy Procedure, which became effective August 1, 1983, provides the procedure by which an action may be removed to the Bankruptcy Court. Rule 9027(d) states:

"Removal of the claim or cause of action is effected on the filing of a copy of the removal application with the clerk of the court from which the claim or cause of action is removed. The parties shall proceed no further in that court unless and until the claim or cause of action is remanded."

There is nothing before this court that indicates any filing was made with the clerk of the Civil Court.

This remand (whether present or prospective) does not carry with it a vacation of the provisions of Bankruptcy Code § 362(a) automatic stay except to the extent necessary to permit the Civil Court Action to continue to the point of entry of judgment. Beacway will have to come back to this court for further relief if, as and when it obtains a final judgment in its favor.

The filing of the Chapter 11 petition has afforded to Concert Arts certain breathing room until a final judgment issues. In the special circumstances of this case, the automatic stay presently has the effect for Concert Arts of a no-cost appeal bond with respect to the Civil Court Action judgment. Unless and until Concert Arts affirms the Beacon Theater lease under Bankruptcy Code § 365, it cannot be compelled to pay the pre-petition rent arrears due to the landlord Beacway. Ordinarily, however, a debtor in possession would have to pay use and occupation for the period of the Chap-

ter 11 in order to prevent the bankruptcy court from lifting the stay for cause. Beacway also complains about alleged dangerous and hazardous conditions on the premises and of failures properly to maintain and repair.

■ The court is of the opinion that cause for lifting the automatic stay at this time has not been shown by Beacway. The Beacon Theater lease is apparently the only major asset of this debtor's estate. See *In re Cheshire Molding Company*, 9 B.R. 309 (Bkrtcy.D.Conn.1981).

Cause does not lie in the nonpayment of use and occupancy by Concert Arts. Concert Arts has stated that it would pay use and occupancy if 50/50 were to pay it or turn over possession of the theater to the Debtor. Beyond its existing direction of a limited provision for use and occupancy payments to Beacway during the times Concert Arts actually uses the theater, this court would be holding contrary to settled bankruptcy law if it directed Concert Arts to pay use and occupancy to Beacway when Concert Arts neither receives any monies from 50/50 nor has the use of the theater. See *Meehan v. King*, 54 F.2d 761 (1st Cir. 1932); *In re United Cigar Stores Co. of America*, 69 F.2d 513 (2d Cir.1934); *In re Theatre Holding Corp.*, 681 F.2d 102 (2d Cir.1982) and *Matter of Theatre Holding Corp.*, 22 B.R. 884 (Bkrtcy.S.D.N.Y.1982); and 2 Collier on Bankruptcy ¶ 365.03[2]. Likewise, the condition of the premises is not presently within the control of the debtor in possession.

Beacway is in a position similar to that of the landlord in the *Theatre Holding* case. In that case, as is the case here, the debtor in possession was not in possession of the real property and the bankruptcy court declined to award use and occupancy. The premises, which were a dinner theater, had been vacated by the debtor's subtenant but the debtor had never retaken possession. The bankruptcy court fixed a 30-day period for the debtor to assume or reject the lease. On appeal, the Second Circuit found that the short 30-day period did not adequately consider congressional intent to af-

ford a reasonable opportunity for the debtor to formulate a reorganization. 681 F.2d at 106. Although the Second Circuit affirmed, it did so because in the year it took for the appeal to be heard the debtor was no closer to composing a plan of reorganization than it had been a year earlier despite its active searches for a new tenant. The *Theatre Holding* landlord received a further rebuff when it sought to recover against a supersedeas bond obtained by the debtor in connection with the appeal. The court found the landlord not entitled to any damages under the bond because of the failure to show that the delay in recovering the premises was in fact the cause of the landlord's loss, it appearing to 'the court that the stay had not been the proximate cause of the landlord's failure to secure a new tenant. See 22 B.R. at 887–888.

Beacway's position may be better than that of the landlord in *Theatre Holding* as in that case there was no one occupying the premises and no income was being generated by use of the premises. Here 50/50 continues to occupy the Beacon Theater premises under color of its October 6, 1981 agreement with Concert Arts and continues to obtain revenues from its use and occupancy of the premises.

Beacway argues that unless it can have issued and enforced a warrant of eviction against Concert Arts it will be unable to prevent 50/50 from remaining in possession, apparently rent-free. It remains to be seen whether Beacway will in fact be unable to oust 50/50 or at least compel 50/50 to pay use and occupancy[7] because of this court's refusal to modify the automatic stay against Concert Arts. Since Concert Arts has sought to oust 50/50 itself, it can have no objection to Beacway doing so. If either Beacway or Concert Arts are successful in removing 50/50, Concert Arts would be restored to possession and this court would be in a position to direct Concert Arts to pay use and occupancy, either at the lease rental rate or at any other rate fixed by Judge Lippmann, and to make appropriate sanctions if Concert Arts were to fail to pay.

■ The protection of the automatic stay is limited to the debtor. Even 50/50 has conceded this. See Weltman Affidavit sworn to February 14, 1984, Paragraph 12 (" * * * the stay is not available to defendants 50/50 or Steve Martin.") Thus, 50/50 cannot use the automatic stay as a shield. *Accord, In re Safeguard Manufacturing Co.,* 25 B.R. 415 (Bkrtcy.D.Conn.1982); *Lynch v. Johns-Manville Sales Corporation,* 710 F.2d 1194, 10 B.C.D. 1282 (6th Cir.1983). This court is not prepared to make an advance determination that Beacway will be unable to secure appropriate relief in the state courts.

At this time, the extent of Concert Arts' interest in the Beacon Theater is unclear, both because its rights against the landlord with respect to the lease have not been finally declared and because it gave up its right to possession of the theater pursuant to the terms of the October 6, 1981 management agreement with 50/50. If Concert Arts cannot terminate the management agreement with 50/50 for cause, or reject it as an executory contract under Bankruptcy Code § 365(a),[8] then the Debt-

---

7. In light of 50/50's willingness expressed on the record in this court to pay the rent stipulated in the lease as use and occupancy commencing March 1, this problem may have been somewhat simplified.

8. No application for rejection of the October 6, 1981 management agreement has been made. Rejection is not automatically granted. Moreover, the Bankruptcy Code provides that if a trustee or debtor in possession

"rejects an unexpired lease of real property of the debtor under which the debtor is the lesser, the lessee under such lease may treat the lease as terminated by such rejection, or, in the alternative, may remain in possession for the balance of the term of such lease and any renewal or extension of such term that is enforceable by such lessee under applicable nonbankruptcy law." 11 U.S.C. § 365(h)(1). Whether the management agreement is "an unexpired lease of real property of the debtor" is an open question. If it is, then 50/50 would have the benefit of § 365(h)(1). If not, 50/50 would have no right to possession of the Beacon Theater and would be left with a claim for any damage caused by the rejection. The term of the management agreement is coextensive with the term of Concert Arts' lease, including renewal options and the amount paid by 50/50 is

or's interest in the Beacon Theater would be limited to the limited rights it retained under the management agreement, including *inter alia,* the right to put on certain international culture events at "cost" instead of the regular theater rental charge. If the 50/50 management agreement cannot be terminated, that would undoubtedly affect Concert Arts' decision with respect to assumption or rejection of the Beacon Theater lease. Although it may ultimately prove that the Debtor's principal gain from pursuing the litigation with Beacway will be to fix or limit its liability to Beacway and/or 50/50 and, incidentally, the liability of its principal, Kazuko Hillyer, who personally guaranteed the Beacon Theater lease, the matter is not presently in a posture to permit any such conclusion.

Should the Debtor ultimately prevail in the litigation with Beacway, it would, as a condition to assumption of the lease, either before or at confirmation, have to satisfy all the monetary conditions of the lease, including payment in full of all arrears in monetary payments. The past due rental payments would not be discharged, as could other unsecured debts, by the payment of the proverbial 10 cents on the dollar, unless the lease were rejected. Assumption, by confirmation of a plan of reorganization or express order, would entitle the landlord to immediate payment in full, with the right to terminate the lease for nonpayment. See Bankruptcy Code § 365(b)(1) ("a trustee [or debtor in possession] may not assume such [an executory contract in default] unless, at the time of assumption * * * the trustee—(A) cures, or provides adequate assurance that the trustee will promptly cure, such default * *.")

Beacway's January 31 motion is denied without prejudice, except to the extent of vacating the automatic stay to the limited extent of permitting the Civil Court Action to proceed to judgment as set forth above. The landlord's motion may be renewed on a

change of circumstances. The Debtor's January 30 motion to remove the Civil Court Action is denied; Beacway's cross-motion of February 17 for a remand is granted. The Debtor's January 31 motion for "adequate protection" for Beacway from 50/50 is denied insofar as it is premised on Bankruptcy Code § 361 because neither that section nor the sections to which it refers provide a form of relief available to a debtor against a non-debtor. To the extent that the January 31 motion and the Debtor's other pending motions involving 50/50 and 50/50's responses seek other relief or relief on a different basis those motions and responses are not being decided today. Concert Arts and 50/50 are apparently pursuing one or more actions in a non-bankruptcy forum or forums. Until 50/50 and/or Concert Arts determine in which forum they are going to pursue their claims and cross-claims or decide to present this court with specific information respecting the pending suits, this court will take no action on the balance of the pending matters.

It is so ordered.

---

equal to the rental due under the lease by Concert Arts to Beacway. Should a rejection motion be made, it may be that the outcome of the

motion would be affected by the legal characterization of the management agreement in the Civil Court Action.