**In re BABYLON LIMITED PARTNERSHIP, Debtor.**

No. 87 B 10614.

United States Bankruptcy Court, S.D. New York.

July 10, 1987.

Harris D. Leinwand, New York City, for debtor-in-possession Babylon Ltd. Partnership.

Finkelstein, Borah, Schwartz, Altschuler, & Goldstein, P.C. by Lewis A. Lindenberg, New York City, for Landlord, Beacon Broadway Co.

Parker, Chapin, Hattau & Klimpl, New York City, for the Creditors Committee; Robert Burrick, of counsel.

## DECISION AND ORDER

HOWARD C. BUSCHMAN III, Bankruptcy Judge.

The debtor in this proceeding, Babylon Limited Partnership ("Babylon" or the "Debtor"), seeks an extension of the 60–day time period, provided for in § 365(d)(4) (1987) (the "Code") in which it must assume or reject a lease between the Debtor (lessee) and Beacon Broadway Company (lessor), of non-residential real property (i.e., the Beacon Theatre), located at 2124 Broadway, New York, New York 10023.

Beacon Broadway Company (hereinafter the "Landlord") is the owner of the premises of the Beacon Theatre. Commencing July 1, 1986, it granted a seven (7) year leasehold interest to Babylon Limited Partnership (hereinafter the "Debtor") in a portion of the premises known as the "theatre, basement, sub-basement underlying theatre, lodge, balcony, related rooms including bathroom, dressing rooms, storerooms, and theatre tower", all in the building situated at 2124 Broadway, and also known as the "Beacon Theatre".

The leasehold agreement contains a "use clause" which permits the premises to be utilized as "a theatre and/or club presenting live contemporary music; and/or dance ... and/or opera; and/or discotheque; and/or right to operate concession stands including one or more bars serving liquor in connection therewith; and/or restaurant." The annual rental rates, as per the lease, are as follows: $800,000 for the first year, ending June 30, 1987; $625,000 for the 12 month period through June 30, 1988; $675,000 for the period through June 30, 1989; $700,000 for the period through June 30, 1990; and $762,000 per year for the period through June 30, 1993; with an option to renew for an additional three (3) year period thereafter.

On or about February, 1987, the Landlord instituted a non-payment proceeding in Part 52 of the Civil Court, New York County, against the Debtor for rent arrears and related expenses totalling $124,249.59 (*Beacon Broadway Co. v. Babylon Limited Partnership*, Index No. L & T 60216/87).

On or about April 3, 1987, the Debtor consented to a final judgment in the Landlord's favor in the sum of $171,591.35. Three days later, on or about April 6, 1987, it filed a voluntary petition with this court pursuant to Chapter 11 of Title 11, of the U.S. Code (Bankruptcy Code).

## I.

The Debtor contends that the lease pertaining to the premises is the principal asset of the estate and that its value is in question because the Debtor's intention to transform the Beacon Theatre into a nightclub has been contested in the state courts. This opposition, the Debtor maintains, precludes the Debtor from commencing construction, completing the project and obtaining an accurate appraisal of the lease.

The Landmarks Preservation Commission for New York City hereinafter referred to as "LCP" has apparently designated the interior of the Beacon Theatre a landmark (N.Y.C. Administrative Code, § 25–301 et seq., (hereinafter, the "Landmark's Law")), which precludes a party from making alterations without prior approval of LPC. Said approval is obtained by filing an application for a certificate of appropriateness, which results in a hearing. The Debtor has seemingly complied with that procedure and a conditional notice of approval to the Debtor was issued to the Debtor, in October of 1986. One of the conditions was to obtain approval for the plan from the N.Y.C. Buildings Department (hereinafter, the NYCBD).

The Debtor proceeded to satisfy the NYCBD approval prerequisite to realizing its goal of opening a nightclub, i.e., to have its plans for interior renovation reviewed and accepted as to the New York City Zoning Resolution and the Building Code. However, the NYCBD has not completed its evaluation process.

If the NYCBD gives approval, the Debtor would apparently be entitled to an alterations permit. Upon transmittal to the LPC, a certificate of appropriateness would then issue. The Debtor would then assume the lease and proceed with its plan to construct a nightclub at the Beacon Theatre.

If the NYCBD denies approval, the Debtor contends that the lease would be worthless. Consequently, the Debtor would opt to reject the lease.

In February of 1987, a group entitled, "The Committee to Save the Beacon Theatre" (the "Committee") commenced proceedings in New York State Supreme Court (Index Nos. 3886/87 and 3885/87) challenging the LPC's approval of the proposed alterations. In addition, the Committee filed an administrative appeal from the NYCBD's determination on January 12, 1987, with respect to the alteration and pursuant to NYC Charter § 666(7)(a), which permits appeals to the Board of Standards and Appeals of the City of New York, from determinations made by the NYCBD. Although the appeals do not directly impede the Debtor's progress towards reaching its goal of opening the nightclub, the Debtor maintains these extensive delays have precluded them from making a decision as to whether the lease should be assumed or rejected.

During the hiatus, the Debtor has permitted an affiliate, Beacon Stage Productions ("Beacon Stage") to hold concerts at the Theatre. Beacon Stage was formed for that purpose by Babylon Enterprises Inc. ("Babylon"), the general partner of the Debtor. All management decisions of Beacon Stage are made by BLP. Beacon Stage has only one managerial employee who is not employed by Babylon. He is paid $500 for each concert that is held. His job is to book concerts for Beacon Stage and the Debtor and to take care of the production details concerning them. Net proceeds of Beacon Stage's expenses are turned over to the Debtor.

The Debtor was formed by Babylon. Its plan to make a public offering of limited partnership interests has been stalled by the disputes regarding use of the theatre for a nightclub. Babylon has controlled the Debtor's operations since its formation and founding.

The Debtor apparently lacks cash and requires contributions from Babylon and those who have invested in Babylon. This has led to difficulty in the initial honoring

of checks delivered to the Landlord as post-petition rent. But on redeposit or otherwise, those checks have subsequently cleared usually within a day or so. The Debtor, as of the hearing, is in arrears in the amount of $1,625.69. June rent of $53,028.52 was not paid given the dispute.

It does not appear that the Debtor has cash to continue paying post-petition rent. The proceeds from concerts are insufficient by themselves. It will continue to rely on contributions in order to make up the shortfall.

## II.

In arguing for an extension of time to assume or reject the Lease, the Debtor asserts that (a) it has been substantially current on all its obligations to the Landlord; (b) it desires to assume the lease; (c) it should be given an opportunity to obtain a judicial determination of whether or not it will be able to renovate the Beacon Theatre to use it as a nightclub before making a substantial investment; (d) that it should not be required to commit itself to the investment unless it knows it can use the premises for the purposes intended. *See Theatre Holding Corp. v. Mauro*, 681 F.2d 102 (2d Cir.1982); *In re Family Showtime Theatres, Inc.*, 58 B.R. 679, 684 (Bankr.E.D.N.Y.1986); *In re Wedtech Corp.*, 72 B.R. 464, 472, Bankr.L.Rep. (CCH) ¶ 71,782 at 91,174 (Bankr.S.D.N.Y.1987); and *In re Musikahn*, 57 B.R. 942, 944 (Bankr.E.D.N.Y.1986).

In opposition, the Landlord argues that there is no lease to assume, alleging that the debtor has breached it by subletting or assigning it to Beacon Stage. It further asserts that the Debtor has failed to timely pay rent, demonstrate cause or provide adequate assurance of its ability to perform the Lease.

## III.

■ The Landlords' breach argument relies on the provision of the Lease barring sublet or assignment without its consent. Relying exclusively on *Mann Theatres Corp. of Cal. v. Mid-Island Shopping Plaza Co.*, 94 A.D.2d 466, 464 N.Y.S.2d 793 (2d Dept.1983), the Landlord claims that the Lease was breached by the Debtor's permitting Beacon Stage to hold concerts on the premises.

In *Mann Theatres*, the court found such a breach in the tenant's entering into an operating agreement to permit a third party to use the premises. In holding that an assignment had occurred in violation of a lease, the court stated that the issue is determined by "the rights that the agreement confers." 94 A.D.2d at 472, 464 N.Y. S.2d 793. Those rights in turn are to be assessed by consideration of:

a) who retained possession of the premises;

b) who retained control of the premises;

c) the existence or absence of a 'reversionary provision';

d) who retained profits and assumed losses; and,

e) who assumed responsibility for hiring and firing of theatre personnel, the films to be shown, and the payment of expenses.

Here, the unrebutted testimony is that the Debtor retained possession and control of the premises, that any profits belonged to the Debtor and that the same entity, its general partner, made all key decisions with regard to the operations of Beacon Stage as it has with respect to the Debtor. On these facts, it is thus clear that no *de facto* assignment under *Mann Theatres* has taken place and we so hold.

## IV.

Section 365(d)(4) of the Bankruptcy Code requires a debtor-in-possession to assume or reject a lease of commercial real property within 60 days of the filing of its Chapter 11 petition unless the Court, for cause shown, orders that the period may be extended. It provides, in pertinent part:

.... if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60 day period, fixes, then

such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor. 11 U.S.C. § 365(d)(4).

■ The "cause" requirement is not one to be lightly dismissed or blindly applied. *In re Wedtech,* 72 B.R. 464, 470, Bankr.L. Rep. (CCH) ¶ 71,782 at 91,173 (Bankr.S.D. N.Y.1987). Determination of the issue is to be made through application of the criteria set forth in *Theatre Holding Corp. v. Mauro,* 681 F.2d 102 (2d Cir.1982), as supplemented by other cases:

> *Theatre Holding* indicates that the following criteria weigh in favor of granting an extension of time: (i) the lease is a primary asset and the "decision to assume or reject the lease would be central to any plan of reorganization" in the Chapter 11 proceeding, 681 F.2d at 106; (ii) the landlord has a reversionary interest in a building built by the tenant on the landlord's land and the gaining of the building would represent a windfall to the landlord, 681 F.2d at 105 n. 3; (iii) the debtor has not had the time necessary to intelligently " '... appraise its financial situation and the potential value of its assets in terms of the formulation of a plan ...' ", 681 F.2d at 106 (quoting *In re Midtown Skating Corp.,* 3 B.R. 194, 197 (Bankr.S.D.N.Y.1983)); and (iv) the existence of any other facts indicating the lack of a "reasonable time to decide whether to assume or reject", 681 F.2d at 105.

To these factors, other courts and the legislative history to § 365(d)(4) have added the following factors supporting the grant of an extension of time to assume: (i) the lessor continues to receive monthly rental payments, *[In re] Bon Ton, [Restaurant and Pastry Shop, Inc.]* 52 B.R. [850] at 855 [ (Bankr. N.D.Ill.1985) ]; (ii) the case is exceptionally complex and involves large numbers of leases, *In re Curio Shoppes, Inc.,* 55 B.R. 148, 154, 13 C.B.C.2d 1012 (Bankr. D.Conn.1985); 130 Cong.Rec. S8891, S8894–95 (daily ed. June 29, 1984) (statement of Sen. Hatch), *reprinted in* 1984 U.S.Code Cong. & Ad.News 590, 598–

601; and (iii) following from the *Theatre Holding* emphasis on intelligent assessment in order to propose a reorganization plan, the need for judicial determination of whether a lease exists since the trustee or debtor-in-possession "cannot be required to commit itself to the investment which assumption of the [l]ease would require unless it knows that it has a lease", *In re Family Showtime Theatres, Inc.,* 58 B.R. 679, 684 (Bankr.E.D. N.Y.1986).

*Wedtech,* 72 B.R. at 471, 472.

■ Here applied, those factors demonstrate the existence of cause. The debtor has paid substantially all of its post-petition rent, the delays have been brief, and due to banking procedures. The lease is its primary asset, indeed, it is the asset upon which its reorganization hopes are pinned. The debtor's present unwillingness to assume is not of its own making, but is due to the uncertainty caused by the lawsuit brought by others, which challenges the use of the theatre as a nightclub. That use is consistent with the use clause of the lease. The debtor does not seek to hold the Landlord in limbo throughout the entire state court process; the Debtor will assume the lease if it prevails at the trial court level.

Principally weighing against a finding of cause are the debtor's lack of funds to assure continued payment of post-petition rent during the extended period, the lack of capitalization necessary to cure pre-petition defaults and to give adequate assurance of continued performance after assumption and the indefiniteness of the state court proceeding. *See* 11 U.S.C. § 365(b) which states, in part:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
>
> > (A) cures, or provides adequate assurance that the trustee will promptly cure, such default;
> >
> > (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for

any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b).

As to the first of these, the remedy is to condition the extension on the timely payment of rent. *Wedtech*, 72 B.R. at 474.

█ As to the second, a debtor-in-possession need not show adequate assurance under 11 U.S.C. § 365(b) until it requests permission to assume. In cases where it is apparent that none could be furnished, cause for an extension would likely not exist. But here, the Debtor plans to revive its limited partnerships offering and thereby obtain capital. On this record, the general partner and investor in that general partnership have both contributed funds to save the lease. Therefore, the prospect of a successful offering cannot be said to be frivolous or excessively remote. The indefiniteness of the state court proceeding does give ground for concern. The Landlord should not be subject to delays caused by lackadaisical prosecution. To remedy that concern does not require the overbroad relief of refusal of the extension and termination of the Lease. Limitation of the extension to a definite period and requiring diligent prosecution of the state court proceeding upon a motion for a further extension, if one is made, adequately addresses the concern.

█ Apparently recognizing these protections, the Landlord also asserts that it will be damaged by the continued holding of concerts at the Beacon Theatre. It alleges that claims might arise if the Lease is terminated after concert tickets have been sold but before the date of the concert. How this harms the Landlord is not precisely stated; no proof of harm was offered. It seems that the Landlord desires

that no concerts be held. Since the use clause permits the holding of concerts, the Landlord is effectively asking us to rewrite its Lease. This we decline to do.[1]

The foregoing constitutes this Court's findings of fact and conclusions of law. The motion is to be granted to the extent of extending the period under § 365(d)(4) until October 1, 1987, conditioned upon the Debtor paying post-petition rent in accordance with the Lease, except that (i) the sum of $1,625.69 be paid within two days of this Order; (ii) that rent for the period from June 1, 1987 through June 30, 1987, during which this case was *sub judice*, be paid on or before July 31, 1987, and (iii) that July 1987 rent is to be paid within 10 days of this decision and order.

It is SO ORDERED.

---

1. The Landlord also contends that the Debtor has not complied with the Lease in that it has not discharged a mechanic's lien placed on the premises by a contractor engaged by the Debtor's pre-petition and that the Landlord is seeking to discharge and have its foreclosure stayed in a state court proceeding. To require a debtor to discharge a mechanic's lien, however, runs afoul not only of the notion of equality among classes but also of the notion that payment of pre-petition debts is to be made pursuant to a plan of reorganization. Further, action to foreclose on the lien is an act to collect a debt of the Debtor and apparently stayed pursuant to 11 U.S.C. § 362(a)(6). *In re Pioneer Valley Indoor Tennis Center, Inc.*, 20 B.R. 884 (Bankr.D.Mass. 1982).