## In re ROYAL INTERNATIONAL CORP., Debtor.

### Bankruptcy No. 38100273.

United States Bankruptcy Court,
W.D. Kentucky.

June 17, 1983.

Thomas H. Meeker, Louisville, Ky., for debtor.

Stephen M. Miller, Nashville, Tenn., for Stanley M. Chernau, Successor Trustee to William D. Castleman.

John W. Ames, Louisville, Ky., for unsecured creditors committee.

## MEMORANDUM AND ORDER

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

The question here is the amount of rent payable as an administrative expense by a tenant in Chapter 11. The landlord claims entitlement to rentals at the contract rate for one full year following the filing of the petition. The tenant contends that no administrative rent should be allowed because, with the property standing vacant, the lease brought no benefit to the Chapter 11 estate. It will come as no surprise to the parties that our answer lies between those extremes.

Royal International Corporation, a restaurant chain, closed the doors of the location here in question when it filed its Chapter 11 petition on February 6, 1981. The landlord,[1] which had not been paid since November, 1980, and had filed a prebankruptcy action in state court to terminate the lease, moved this Court in August, 1981, to compel the tenant-debtor in possession to either accept or reject the lease. The parties stipulated that the debtor would have 30 days after September 29, 1981, within which to exercise its statutory option.

However, no action was taken by the debtor in possession within the 30-day period. Nothing further occurred until January 15, 1982, when the tenant moved to reject the lease. The landlord objected and filed an administrative expense claim for rental payments accruing through February 6, 1982.

Section 503(b) of the Bankruptcy Code requires the payment of administrative expenses and gives seniority to "the actual, necessary costs and expenses of preserving the estate."[2] Rental expenses clearly fall within the category.[3]

■ Section 365 of the Code permits the assumption or rejection of unexpired leases. In Chapter 11 cases there are no time constraints; any party having an interest in the lease may raise the issue at any time. The Court may set a time within which the decision must be made.

In the case before us, Royal International took no action within the 30-day time limit agreed upon and approved by the Court on September 29, 1981. Despite that inaction, however, we hold that the tenant's liability on the lease terminated on October 29, 1981. The tenant's failure to act we regard as a presumptive rejection, sufficient to shift to the landlord the burden of affirmatively

---

1. The landlord's interests are represented here by its trustee in bankruptcy. The restaurant is located in Rivergate Shopping Center, Goodlettsville, Tennessee, a suburb of Nashville.

2. 11 U.S.C. § 503(b)(1)(A).

3. Collier on Bankruptcy, ¶ 523.04 (15th Ed. 1982).

protecting his interest in the leased premises after the October date.

■ A doctrine of presumptive rejection has been fashioned by the Second Circuit Court of Appeals.[4] Derived by analogy from the statutory presumption of rejection which occurs in liquidation cases upon the failure of a trustee to accept or reject unexpired leases within 60 days,[5] the doctrine places the initial burden of protecting Chapter 11 assets squarely where it belongs, with the debtor in possession. Where he is a tenant, as here, he stands to lose the use of commercially valuable operating space unless he reaffirms his tenancy within the time alloted by the Court.

The logical extension of the doctrine, which we also reach here, is that the landlord bears the risk of future uncompensated occupancy unless he immediately moves to protect his interest at the end of the court-ordered term.

In its burden-shifting effect, the doctrine is abundantly fair. Writing *in tabula rasa* on the point in this jurisdiction we endorse the doctrine for application to this and similar cases.

■ Having concluded that the tenant's liability on the lease terminated on October 29, 1981, and not on February 6, 1982, as argued by the landlord, we must now determine the amount of the rentals to be treated as administrative expenses for the period.

The landlord predictably contends for the contract rate of $2,786.46 monthly. Royal contends that no rent should be paid because there was no benefit to the estate.[6] On that point we depart from Royal's position; although the space was not put to its intended use as a restaurant, it was used for storage for an interim period. Property was kept there which otherwise would have incurred moving and storage charges. The debtor in possession had a duty to preserve that property, and the resultant expense should be borne by the Chapter 11 estate.[7]

■ If economy to the Chapter 11 estate were the only factor to be considered,[8] it would make sense to charge the debtor in possession only for the actual use and reasonable rental value of the property. Indeed there is recent authority to that effect. See *In re Peninsula Gunite, Inc.,* 24 B.R. 593, 10 B.C.D. 80 (Bkrtcy.App., 9th Cir. 1982). However, the majority view, long since embraced by our own Sixth Circuit in a rule that retains its vitality despite the passage of eighty years, holds that the contract rental rate, rather than fair rental value considering the specific use of the property, should apply. We necessarily defer to the established rule of *Dayton Hydraulic Co. v. Felsenthall.*[9]

In furtherance of the foregoing, which for purposes of appeal may be considered our findings of fact and conclusions of law, it is hereby ORDERED that rentals at the

---

**4.** *Theatre Holding Corp. v. Mauro,* 681 F.2d 102 (2d Cir.1982).

**5.** 11 U.S.C. § 365(d)(1).

**6.** Royal argues alternatively for the application of lower warehouse and storage rentals, but there is no evidence in the record of the rates applicable in the Goodlettsville, Tennessee area. Considering our treatment of the issue in the text *infra,* the point is of only passing interest.

**7.** After the within matter came under submission, we decided that Royal had no equity in the stored property; however, that *ex post* determination had no bearing on Royal's initial duty to protect the property until its rights were adjudicated.

**8.** Other obvious considerations are protection of the landlord's contract claim and the market value of the leasehold otherwise obtainable.

**9.** 116 F. 961 (6th Cir.1902). Accord, *Mathews v. Butte Machinery Co.,* 286 F. 801 (9th Cir. 1923). A Bankruptcy Court in Michigan commented in *Matter of Sanders,* 22 B.R. 902 (Bkrtcy.E.D.Mich.1982), that "Equity is best served by the rule adopted in … *Dayton Hydraulic Co. v. Felsenthall.*" See also, *In re Atlantic Boat Builders Co.,* 5 B.C.D. 128 (M.D. Fla.1979) (contract rate applied where equipment only in storage on premises).

We suspect that the judicial attraction to the rule is based as much on ease of mathematical computation as on equity grounds; a use-value rental rule could produce complex evidentiary questions of market value.

contract rate for the period of February 6, 1981 through October 29, 1981, payable to Stanley M. Chernau, Successor Trustee to William D. Castleman, Trustee (see Proof of Claim No. 142), are allowable as administrative expenses under 11 U.S.C. § 503(b) of the Bankruptcy Code. This is a final order.