**In re MASTERCRAFT RECORD PLAT-ING, INC., Raleigh Records, Inc. and Longwear Stamper Corp.**

**BEKINS ARCHIVAL SERVICES, INC., Plaintiff,**

v.

**MASTERCRAFT RECORD PLATING, INC. and Longwear Stamper Corp., Defendants.**

**Bankruptcy Nos. 80 B 10791 (PBA), 80 B 10999 (PBA) and 80 B 11000 (PBA). Adv. No. 81–5753–A.**

United States Bankruptcy Court, S.D. New York.

Aug. 12, 1983.

George R. Osborne, New York City, for debtors.

Lovejoy, Wasson & Ashton, New York City, for Bekins Archival Services, Inc.; Douglas Foster, New York City, of counsel.

PRUDENCE B. ABRAM, Bankruptcy Judge.

This matter came on for hearing on June 20, 1983 upon the motion of Bekins Archival Services, Inc. ("Bekins") seeking an order directing payment to Bekins of the reasonable value of the use and occupancy by the debtors, Mastercraft Record Plating, Inc. ("Mastercraft") and Longwear Stamper Corp. (collectively the "debtors"), for certain premises in Manhattan from August 1, 1981 to date. See Bankruptcy Code Sec. 503, 11 U.S.C. § 503. The court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

The premises in question are located at 609 West 51st Street, New York City. The debtors have occupied the fourth floor of the premises since 1970. In 1979 the debtors entered into an amendment to the lease agreement whereby the debtors gave up a portion of the fourth floor of the building, the ongoing rental was fixed at $1,629.04 a month and the end of the term of the lease set at July 31, 1981. The amendment provided that should the debtors remain in possession beyond the lease termination date of July 31, 1981 they would be obligated to pay use and occupancy at the rate of $5,000 per month.

In May 1980 the debtors filed petitions for reorganization pursuant to Chapter 11 of the Bankruptcy Code. The debtors have continued to operate their record electroplating business as debtors-in-possession.

Upon the expiration of the lease on July 31, 1981, the debtors continued to occupy the premises and still occupy the premises and thus are holdover tenants. On November 9, 1981 Bekins instituted an adversary proceeding seeking payment of use and occupancy at the penalty rate of $5,000 per month as provided for by the terms of the lease and a turnover of the premises. At a hearing held on January 12, 1982, the bankruptcy judge to whom this case was then assigned directed the debtors to surrender the premises on or before April 30, 1982.

At a hearing held on May 3, 1982, the bankruptcy judge extended the debtors' time to vacate from April 30 to May 28, 1982 and stated "I am going to permit you [Bekins] to proceed in a local court to get a warrant [of] eviction effective the close of the business the 28th of May, so that once it's served all things have terminated." Sometime after the May 3 hearing Bekins apparently ceased to have immediate need for the premises and allowed the debtors to remain in possession beyond the May 28, 1982 deadline.

Approximately ten months later and on March 17, 1983 Bekins filed a petition in the Landlord and Tenant Part of the Civil Court of New York County against the debtors initiating a summary proceeding for possession of the premises. In addition to seeking possession Bekins sought the sum of $67,419.20 as additional use and occupancy, and an additional sum for damages to the premises caused by the debtors. The debtors sought and obtained an order from the bankruptcy court enjoining the summary proceeding pending a hearing. At a hearing held on April 21, 1983, this court directed the debtors to vacate the premises within 90 days i.e., on or before July 20, 1983, which date was further extended on August 11, 1983. The court declined to fix use and occupation at the $5,000 penalty rate provided in the lease and held that it would be necessary for Bekins to present expert testimony concerning the fair rental value of the premises in order to prove its claim for additional use and occupancy.

A hearing on the fair rental value of the premises was held on June 20, 1983. At that hearing Bekins called Mr. Kamal S. Bahary to testify as to the fair rental value of the premises. Mr. Bahary is a real estate broker specializing in industrial real estate on the West Side of Manhattan and has lectured and taught courses on real estate appraisal and is a member of several real estate associations. Mr. Bahary testified that he is familiar with the premises, and on the basis of his knowledge and familiarity with recent industrial rentals in that area the current fair market value is approximately $4.50 per square foot. He fur-

ther testified that on August 1, 1981 the fair rental value was approximately $3.50 per square foot, and in his opinion the average fair rental value for the premises for the period August 1, 1981 to date is approximately $4.00 per square foot. Based on an area calculation drawing which Mr. Bahary testified to as being accurate, the debtors occupy 9783 square feet. Mr. Bahary determined the average fair rental value of the premises occupied by the debtors to be $3,261 per month since August, 1981. The court accepts the testimony of Mr. Bahary, an experienced and knowledgable real estate appraiser specializing in industrial premises in this area.

The 9783 square foot figure used by Mr. Bahary was arrived at by adding the space that debtors occupy, plus the space where Mastercraft houses its boiler, plus one half of the common areas. The debtors contend that the square footage attributed to them is less than 9783, that it is approximately 9000 square feet. The debtors offered no testimony as to what they believed the fair rental value of the premises to be. Len Frank, president of the debtors, testified that he had offered to turn over some of the space to Bekins at various times during the period in question. Bekins did not accept the debtors' offers to return portions of the space, and at no time did the debtors vacate the premises.

## DISCUSSION AND CONCLUSIONS OF LAW

In determining the amount of the claim for use and occupancy the court will look to "the reasonable value of such use and enjoyment." *Collier on Bankruptcy* ¶ 503.04 at 503–16 (15th ed. 1979). In many instances the reasonable value will be the contractual rent as provided for in the terms of the lease. However, the rent reserved in the lease is not conclusive, and the fact that the lease was negotiated at arms length does not remove the issue from judicial scrutiny. *See S & W Holding Company v. Kuriansky*, 317 F.2d 666 (2d Cir.1963).

■ In determining the reasonable value of the use and occupancy of the premises in question, the court notes that the provision of the lease providing for a monthly rental of $5,000 should the debtors remain in possession beyond July 31, 1981 was in substance intended as a penalty rent, and was not a reflection of what the parties considered to be a fair rental value at that time. The award of a penalty rent as use and occupation is in conflict with the purposes and spirit of a Chapter 11 reorganization and this court declines to fix use and occupation on the basis of this term of the lease. *See In re Oahu Cabinets, Ltd.,* 12 B.R. 160, 165 (Bkrtcy.D.Haw.1981).

■ The reasonable value of use and occupancy of $3,261 per month found by this court is approximately double the lease rental of $1,629.04. In a situation such as this where the debtors have been holdover tenants for over two years and market conditions dictate that the rent reserved under the expired lease is no longer reflective of commercial reality, the court is justified in fixing use and occupation at an amount substantially higher than the rent reserved in the expired lease. *See S & W Holding Company v. Kuriansky,* 317 F.2d 666 (2d Cir.1963).

The court notes that the debtors have offered no expert testimony of their own to rebut the testimony of Mr. Bahary, nor have they brought any facts to the court's attention which would warrant the court's rejection of the testimony of Mr. Bahary regarding the fair market value of the premises. Indeed, Mr. Frank appeared to agree with Mr. Bahary's testimony on the market rental. Although the debtors did dispute the landlord's evidence as to how many square feet the debtors occupy, the court accepts the testimony of Mr. Bahary that the floor plan and "area drawing" are accurate. Thus, the court finds $3,261 per month to be the reasonable value for use and occupation of the premises since August, 1981. The debtors have made current monthly payments in the amount of the old rent during these proceedings.

■ The debtors contend the landlord is estopped from claiming these increased use and occupation payments on the ground that a various times since the debtors became holdover tenants the debtors have offered to give back portions of the space to the landlord. This contention warrants little discussion. The debtors never vacated the premises and currently remain in possession. The fact that the debtors made an offer to return some space which was not accepted by the landlord has no bearing on fixing the fair market value of the premises. *Compare Matter of Florida Airlines, Inc.,* 17 B.R. 683 (Bkrtcy.M.D.Fla.1982). The landlord should not be made to accept return of the premises in a piece-meal fashion at the whim of the debtors, particularly in a case such as this in which the premises are used for an industrial manufacturing process using acids, which may have caused damage to the premises, and the landlord intends to utilize the premises in its business as a commercial storage facility for business records. Accordingly, the debtors are liable for the reasonable value of the use and occupation for the entire space covered by the expired lease from August 1, 1981 though the date the debtors vacate.

■ There remains one further issue to be disposed of. Subsequent to the filing of the Chapter 11 petitions the debtors paid to Bekins $9,500 to be applied against pre-petition accrued rental obligations. This transfer was unauthorized and is subject to avoidance pursuant to Bankruptcy Code § 549, 11 U.S.C. § 549. *Matter of B & W Enterprises, Inc.,* 19 B.R. 421 (Bkrtcy.D.Idaho 1982); *In re Jepsco Bldg. Materials, Inc.,* 15 B.R. 122 (Bkrtcy.S.D.Fla.1981). In light of the fact that the court has determined that the debtors are to pay Bekins use and occupancy in an amount which exceeds the $9,500 post-petition transfer, the court directs that Bekins retain the $9,500 and apply it against the accrued use and occupation claim. To direct Bekins to turnover these funds to the debtors would serve no useful purpose as Bekins has a priority expense for use and occupation of the premises. *See* Bankruptcy Code Sec. 503(b), 11 U.S.C. § 503(b). In addition the necessary

mutuality exists to permit Bekins to exercise a right of setoff.

### CONCLUSION

Based on the foregoing facts the court holds that Bekins is entitled to the sum of $3,261 per month as the reasonable value of the use and occupation of the premises for the period beginning August 1, 1981 and continuing to date. Bekins is ordered to apply the $9,500 previously received from the debtors subsequent to the filing of the petition against their claim for use and occupation.

SO ORDERED.