**In re ENERGY RESOURCES CO., INC., Debtor.**

**Bankruptcy No. 83–60–JG.**

United States Bankruptcy Court, D. Massachusetts.

March 20, 1985.

Jill W. Landsberg, Widett, Slater & Goldman, Boston, Mass., for landlord.

James D. McGinley, Gaston Snow & Ely Bartlett, Boston, Mass., for debtor.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

This contested matter came before the Court on the Proof of Claim filed by Cambridge I Associates ("Cambridge I" or "the landlord") seeking payment of approximately $160,000 for the debtor's use and occupancy of leased premises at One Alewife Place, Cambridge, Massachusetts. The debtor ("Erco" or "the debtor") filed an opposition and a trial was held. After trial the landlord agreed to limit its claim for use and occupancy for the period after the filing date to April 4, 1983. The debtor submits that its liability for use and occupancy is a maximum amount of $72,500. The debtor has paid $26,000 during the pendency of the case. Based upon the testimony and documentary evidence the Court submits the following findings of fact and conclusions of law as required by Bankruptcy rule 7052.

In May of 1981 the debtor and Cambridge I entered into a lease for the third floor of One Alewife Place, Cambridge, Massachusetts, consisting of 40,874 square feet of office space. The lease provided for an annual fixed rent of $500,328 ($41,694 per month) and for payment by Erco of approximately 37% of expenses incurred by the landlord in the operation of the build-

ing. The third floor is easily divisible into two or four rentable portions. In January of 1982, the parties amended the lease. Erco agreed to lease additional space known as the east wing at a monthly rental of $13,155.75 plus a proportionate share of expenses. Payment of variable expenses was negotiated by the parties to decrease the square foot rental rate originally proposed by the landlord.

Erco filed its chapter 11 petition on January 17, 1983 at 4:53 P.M. After the filing of the petition the debtor occupied the entire third floor through February 2, 1983. Its use and occupancy of the premises during this period was the same as it had been prior to the filing. In late January, the president of Erco told Mr. Shocket of Cambridge I of Erco's plans to consolidate its office space and on February 2, 1983 Erco moved its personnel to the western half of the third floor. Left behind on the eastern half of the third floor were the debtor's leased office furniture and telephone system. Mr. Buselli the debtor's president and Mr. Shocket had discussed the eastern half of the premises prior to the consolidation. Buselli testified that Shocket agreed to allow the furniture to remain there because he intended to relet the eastern portion and it would make the premises attractive to prospective tenants. Shocket did not recall agreeing to this arrangement. I find that Shocket and Buselli agreed to leave the debtor's furniture on the eastern half for their mutual benefit. This agreement was reached for a mutual purpose: Erco would not have to move the furniture and would have time to decide whether to assume the furniture leases and Shocket could showcase the premises. Thus, Erco used the eastern portion of the entire third floor premises to the extent that its furniture remained on the eastern half of the third floor. The landlord and the debtor have stipulated that the cost of storage of furniture and equipment with storage companies in the vicinity of Cambridge during the relevant period was $.65 per square foot for 2000 square feet.

Prior to the filing, the debtor never fully used the east wing and merely housed a refrigerator containing samples there. The debtor used this refrigerator until January 23, 1983, when an employee of Erco informed Cambridge I that Erco would no longer use it in the east wing because the samples were being moved to another location. Erco did not move the refrigerator from the east wing until April 4, 1983.

 In a chapter 11 case prior to assumption or rejection of a lease, a debtor who occupies premises as a tenant is liable for the reasonable value of its use and occupancy of the premises which claim has the status of an administrative expense. *See L. King, 2 Collier On Bankruptcy,* ¶ 365.03, at 365–24 (15th ed. Supp.1983). Various interpretations of the concept of "reasonable value of use and occupancy" have developed. Some courts restrict a lessor's claim to the value of the debtor's actual use of the property. *See, e.g., American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.,* 280 F.2d 119 (2d Cir.1960); *In Re Peninsula Gunite Inc.* 24 B.R. 593 (Bankr. 9th Cir. 1982); *In Re Cardinal Export Corp.* 30 B.R. 682 (Bankr.E.D.N.Y.1983); *In Re Theatre Holding Corp.,* 22 B.R. 884 (Bankr.S. D.N.Y.1982). The better view, in my opinion, measures the landlord's claim by the reasonable value of the leased property and not on the actual use by the debtor. *See, e.g., Kneeland v. American Loan & Trust Co.,* 136 U.S. 89, 10 S.Ct. 950, 34 L.Ed. 379 (1890); *Diversified Services, Inc. v. Harralson,* 369 F.2d 93 (5th Cir.1966); *In Re Milliard's, Inc.,* 41 F.2d 498 (7th Cir.1930); *Fleming v. Noble,* 250 Fed. 733 (1st Cir. 1918); *Dayton Hydraulic Co. v. Felsenthall,* 116 Fed. 961 (6th Cir.1902); *In Re Florida Air Lines, Inc.,* 17 B.R. 683 (Bankr.M.D.Fla.1982); *see also In Re Nathanson,* 24 F.2d 760 (D.Mass.1927); *In Re Royal International Corp.,* 30 B.R. 750 (Bankr.W.D.Ky.1983). A lessor's claim should not be restricted to the debtor's use. In *Matter of Fred Sanders Co.,* 22 B.R. 902 (Bankr.E.D.Mich.1982), the court rejected a debtor's assertion that it need not pay rent for vehicles it possessed but did not physically use, and stated: "The lessor

has a right to assume that until a debtor rejects a lease the leased property is being used for the purpose for which it was leased and that the debtor will pay the reasonable value of the property measured by such use". *Id.* at 906. Although it recognized that minimizing administrative expenses was a desirable goal, the Court also considered the rights of holders of valid charges against the estate. "To permit a debtor to deprive a lessor of the use of his property and unilaterally dictate the amount of a lessor's claim does not comport with elementary notions of justice." *Id.* at 906. This view was adopted in *In Re GHR Energy Corp.*, 41 B.R. 668 (Bankr.D. Mass.1984) where the Court held the debtor liable for rent according to the lease for storage of petroleum products, even though the tanks were only partially used. *Id.* at *672.* The Court rejected the debtor's contention that the debtor should only be charged for the number of barrels stored. *Id.* at 672–73. "The landlord should not be made to accept return of the premises in a piece-meal fashion at the whim of the debtors . . . ." *In Re Mastercraft Record Plating, Inc.*, 32 B.R. 112, (Bankr.S.D.N.Y. 1983). In the absence of an affirmative abandonment, where a debtor has left its property on the landlord's premises, the landlord is entitled to an administrative expense for use and occupancy of the entire premises. *See Matter of Florida Airlines, Inc.*, 17 B.R. 683 (Bankr.M.D.Fla.1982).

The second step in arriving at the amount of a debtor's liability for post-petition use and occupancy requires the Court to determine the appropriate rate for use of the premises. The rent under the lease is the appropriate use and occupancy rate unless the debtor produces evidence that it is unreasonable. *See L. King, 3A Collier On Bankruptcy*, ¶ 62.14, at 1516 (14th ed. Supp.1975); *In Re GHR Energy Corp.* 41 B.R. 668 (Bankr.D.Mass.1984). The debtor's asserted use of the property for "storage" does not affect its liability for the contract rate rent where the debtor continues to possess the premises. *See In Re Royal Intern. Corp.*, 30 B.R. 750 (Bankr. W.D.Ky.1983). Applying these principles

to the three different areas of contention between Erco and Cambridge I, I rule as follows:

### The Third Floor

The debtor fully occupied the entire third floor in the same fashion as it had prior to the filing through February 2, 1983. The base contract rate for the third floor is $1370.76 per day. Based upon debtor's sixteen days of post-petition occupancy for the entire third floor, the debtor's base rent liability for this period is $21,932.16. The debtor occupied the western half of the third floor as its corporate offices from February 2, 1983 through April 4, 1983. It is liable for the contract base rate of rent for this period which totals $41,808.18. Although the debtor did not use the eastern half of the third floor for its offices from February 3, 1983 to April 4, 1983, it did leave its furniture there, with the knowledge and consent of the landlord. The landlord does not claim the lease rate and only claims the cost of storing the furniture based on the full square footage of the occupied portion. I accept this method of calculating use and occupancy and reject the debtor's contention that it is only liable for the actual space the furniture occupied because the furniture occupied the entire eastern half for the benefit of the debtor as well as to enhance rental prospects. Therefore I find the debtor liable for $26,-640.81 for use and occupancy for sixty-three days for the eastern half of the third floor.

### Expenses

Under the terms of the lease, as part of its rental obligation, the debtor was responsible for its proportionate share of expenses for both the third floor and the east wing. The landlord's comptroller testified from a summary of expenses that during the post-petition period the building had $72,052.54 in expenses. This is incorrect from the face of the document because it included a $1450 expense for post-petition snow removal. Erco's share of expenses

was 37.62% allocated to the east wing. The debtor's assertion that since the debtor only occupied 31% of the building, it is only liable for 31% of expenses is without merit. This fact cannot change its liability for expenses. First, this occupancy percentage ignores debtor's liability for the east wing. Secondly, the debtor did not show that the 37.62% is unreasonable. During its post-petition occupancy the debtor benefited from the services rendered and expenses incurred by the landlord. It is irrelevant that the landlord would have incurred the same obligations during this period. The debtor cannot expect the landlord to absorb the cost of its proportionate share of expenses incurred which were considered rent under the lease. The per diem charge for expenses for the third floor is $334.31. Based upon seventy-seven days of post-petition occupancy, the debtor's liability for expenses for the third floor amounts to $25,764.87. The debtor is responsible for expenses for the period during which the east wing was fully occupied (six days). The per diem expense figure for the east wing is $56.08 for a liability of $336.49.

### East Wing

The debtor is liable for the full amount of base rent for the six day period from January 18 to January 23, 1983. The per diem base rent for the east wing was $432.52, for a total liability of $2,595.12 for base rent. After January 23, 1983 the landlord was on notice that the debtor had abandoned the east wing. However, the debtor was derelict in not removing its cooler from the east wing until April. I believe the landlord is entitled to the $128 cost of storing the cooler in a warehouse for the period.

■ Based upon the above findings, the administrative claim of Cambridge I Associates is allowed in the amount of $119,-182.51. $26,000 having been paid to date, the balance payable is $93,182.51.