### In re MOHAWK INDUSTRIES, INC., Debtor.

### Bankruptcy No. 4–84–00025–G.

United States Bankruptcy Court,
D. Massachusetts.

Oct. 23, 1985.

Edward C. Bassett, Mirick, O'Connell, DeMallie & Lougee, Worcester, Mass., for plaintiff.

Joseph H. Reinhardt, Hendel, Collins & Stocks, P.C., Springfield, Mass., for defendant.

MEMORANDUM AND ORDER IN RESPONSE TO RELATED INDUSTRIES, INC.'S REQUEST FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE

PAUL W. GLENNON, Bankruptcy Judge.

This matter comes before the Court upon request of Related Industries, Inc. ("Related") that this Court determine that Related has, pursuant to § 503 and § 507 of the Bankruptcy Code,[1] a first priority administrative expense as a result of the debtor's, Mohawk Industries, Inc.'s (the "Debtor" or "Mohawk"), use of a four story factory building at 189 Beaver Street, North Adams, Massachusetts (the "Beaver Mill"). Related seeks to recover the fair rental value of the premises from January 13, 1984 through May 2, 1985 as well as reimbursement for gas and electric expenses. Mohawk admits that Related is entitled to a first priority administrative expense; therefore, the sole issue to be determined by the Court is the amount of rent and utilities owed to Related.

## FACTS

In 1981, Related entered into a lease with the Economic Development Commission ("EDC") for the lease of approximately 93,000 square feet at the Beaver Mill (the "EDC Lease").

In January of 1983, Mohawk entered into a lease with Related for the use of 27,359 square feet of floor space at the Beaver Mill (the "Related Lease"). Mohawk used the rented space to manufacture tents for the Department of Defense. Under the terms of the Related Lease, the Debtor was to pay $3,419.88 monthly in rent and Related was to pay for the utilities necessary to the Debtor's occupation of the leasehold.

Between July 1, 1983 and January 24, 1984 the Debtor entered into several oral agreements to rent an additional 30,193 square feet in the Beaver Mill, bringing the

---

1. 11 U.S.C. § 503, in relevant part, states:
   (b) After notice and hearing, there shall be allowed administrative expenses ... including—
   (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after commencement of the case....

11 U.S.C. § 507, in relevant part, states:
(a) The following expenses and claims have priority in the following order:
(1) First, administrative expenses allowed under section 503(b) of this title....

total space rented to 57,552 square feet.[2] Under the terms of these oral agreements, the Debtor was to pay, $3,786.62 per month for the additional space, in addition to the $3,419.88 per month under the Related Lease, or a total monthly rental payment of $7,206.50. Related was to pay for the utilities necessary to the Debtor's occupation of the additional space.[3]

The Related Lease and the subsequent oral agreements were all rejected by the Debtor, effective October 31, 1984. The Court approved the rejection of the lease by the Debtor on November 20, 1984. At that time, Mohawk ceased it manufacturing operations. .

On January 13, 1984 when Mohawk filed its petition in bankruptcy under Chapter 11, Mohawk, as stipulated by the parties, was occupying 57,652 square feet of the Beaver Mill premises, or 62% of the space leased by Related under the EDC Lease. Between January 13, 1984 and approximately November 20, 1984, a period stipulated by the parties to represent 84% of the 1984 calendar year, Mohawk continued to use the leased premises for manufacturing purposes (the "Manufacturing Period") and paid Related the stipulated sum of $52,726.61 for rent. Thereafter, until May 2, 1985, Mohawk used the premises only for the storage of the equipment and inventory left behind when Mohawk shut down its manufacturing operation (the "Storage Period"). Mohawk left roll goods, lettings, hardware, burlap and tents throughout the 57,652 square feet that it had occupied under the Related Lease and the additional oral agreements. By May 2, 1985, Mohawk had removed all of the inventory and delivered it to the United States Government.[4]

## DISCUSSION

Section 503(b)(1)(A) of the Bankruptcy Code provides that "necessary costs and expenses of preserving the estate" shall be allowed as administrative expenses. Rent, as one of the most common administrative expenses necessary to the preservation of the estate, is a frequently litigated expense. It is well established that when the debtor occupies premises as a tenant the reasonable value of the use and occupancy determines the amount of rent recoverable as an administrative expense, *Philadelphia Co. v. Dipple*, 312 U.S. 168, 61 S.Ct. 538, 85 L.Ed. 651 (1941); and that upon rejection of the lease, the debtor who occupies the premises as a tenant is liable for administrative rent from the filing of the petition until the surrender of the premises. *In re Energy Resources, Inc.*, 47 B.R. 337 (Bankr.D.Mass.1985); *In re Gourmet Gallery, Inc.*, 27 B.R. 912 (Bankr.D.Pa.1983); *In re Royal International Corp.*, (30 B.R. 751 (Bankr.W.D.Ky.1983).

Two lines of cases have developed with respect to determining the "reasonable value of use and occupancy". One line of cases, led by *In re United Cigar Stores Company of America*, 69 F.2d 513 (2d Cir.1934), *cert. denied sub nom., Reisen-*

---

2. The parties stipulated that the Debtor occupied 57,652 square feet. The Court, therefore, will utilize that figure.

3. Mohawk set forth the terms of its lease with Related, as well as the terms of the subsequent oral agreements, in its objection to Related's claim for an administrative expense. At no time during the course of the hearing did Related raise the issue of the lease or dispute its terms. Related's witness Joseph Martin, President of Related, admitted the terms of the lease in his testimony about an April 11, 1984 meeting attended by executives of Related, Mohawk and Cecile Industries, Inc. ("Cecile") the company in whose name the gas and electric utilities used by Mohawk were listed. At that meeting, which was called to discuss expenses at the Beaver

Mill, Martin suggested $2.85 per square foot per year as a fair and reasonable rental rate with utilities. Implicit in this figure is $6,500 per month for utilities, a figure corroborated by the testimony of John J. Miller, President of Cecile, and $7,206.50 per month for rent, a figure entirely consistent with the rent reserved by the lease and oral agreements ($7,206.50 + $6,500.00 = $13,706.50/mo. × 12 mo. = $164,478.00/yr. ÷ 57,652 square ft. = $2.85/square ft./yr.).

4. Bills of lading, admitted into evidence at the June 11, 1985 hearing on Related's request for the allowance of an administrative expense, serve to demonstrate that Mohawk removed the inventory from the Beaver Mill premises between April 8, 1985 and May 2, 1985.

webers, Inc. v. Irving Trust Co., 293 U.S. 566, 55 S.Ct. 76, 79 L.Ed. 665 (1934),[5] restricts a lessor's claim to the value of the debtor's actual use of property. The other line of cases, led by *Kneeland v. American Loan and Trust Co.*, 136 U.S. 89, 10 S.Ct. 950, 34 L.Ed. 379 (1890),[6] measures the landlord's claim by the reasonable value of the leased property without regard to the actual use by the debtor. Two recent Massachusetts cases, *In re Energy Resources Co., Inc.*, 47 B.R. 337 (Bankr.D.Mass.1985), and *In re GHR Energy Corp.*, 41 B.R. 668 (Bankr.D.Mass.1984), clearly indicate that Massachusetts' bankruptcy courts, relying specifically on *In The Matter of Fred Sanders Co., Inc.*, 22 B.R. 902 (Bankr.E.D. Mich.1982), subscribe to the *Kneeland* line of cases.

■ In conjunction with these principles, this Court in the absence of any convincing evidence to the contrary, will presume that the rental payment fixed in the lease is reasonable. *See, e.g., S & W Holding Co. v. Kuriansky*, 317 F.2d 666 (2d Cir.1963); *In The Matter of North Atlantic and Gulf Steamship Co.*, 166 F.Supp. 29 (S.D.N.Y. 1958), *aff'd sub nom., 120 Wall Associates v. Schilling*, 266 F.2d 548 (2d Cir.1959); *Green v. Finnigan Realty Co.*, 70 F.2d 465 (5th Cir.1934); *In re Chase Commissary Corp.*, 11 F.Supp. 288 (S.D.N.Y.1935); *In re Energy Resources Co., Inc.* 47 B.R. 337 (Bankr.D.Mass.1985); *In re GHR Energy Corp.*, 41 B.R. 668 (Bankr.D.Mass.1984). Furthermore, where the debtor continues to possess the premises, its liability for the lease payment rate is not affected by its purported use of the property for storage. *In re Energy Resources Co., Inc.*, 47 B.R. 337 (Bankr.D.Mass.1985); *In re Royal International Corp.*, 30 B.R. 750 (Bankr.W. D.Ky.1983).

In the case *sub judice*, Related and Mohawk disagree on three basic points: 1) the fair rental value per square foot of the leased premises during both the Manufacturing and Storage periods, 2) the debtor's fair share of utility expenses incurred during the Manufacturing period and 3) the number of square feet occupied by the debtor during the Storage Period. A summary of the positions of the parties reveals the following:

### MANUFACTURING PERIOD

| | RELATED | MOHAWK |
|---|---|---|
| FAIR RENTAL VALUE PER SQ. FT. | $ 1.50 | $ .75 |
| SQ. FT. OCCUPIED * | 57,652 | 57,652 |
| RENT PER YEAR | $ 86,478 | $ 43,239.00 |
| DURATION OF RENTAL PERIOD * (% OF YEAR) | 84% | 84% |
| RENT PER DURATION | $ 72,641.52 | $ 36,320.76 |
| GAS PAID BY RELATED | $ 22,008.05 | $ 17,576.04 |
| FAIR SHARE % | 80% | 62% |
| TOTAL GAS OWED RELATED | $ 17,606.44 | $ 10,897.15 |
| ELECTRIC PAID * | $ 6,022.51 | $ 6,022.51 |
| FAIR SHARE % | 90% | 62% |
| TOTAL ELECTRIC OWED RELATED | $ 5,420.26 | $ 3,733.96 |
| RENT PAID BY MOHAWK | $ 52,726.61 | $ 52,726.61 |
| SUB TOTAL OF AMOUNT OWED RELATED | $ 42,941.61 | ($ 1,774.75) |

### STORAGE PERIOD

| | RELATED | MOHAWK |
|---|---|---|
| FAIR RENTAL VALUE PER SQ. FT. | $ 1.50 | $ .75 |
| SQ. FT. OCCUPIED | 57,652 | 1500 |
| RENT PER YEAR | $ 86,478.00 | $ 1,125.00 |
| DURATION OF RENTAL PERIOD ** | 5 months | 52% of the yr. |
| SUB TOTAL OF AMOUNT OWED RELATED | $ 36,032.50 | $ 585.00 |
| TOTAL | $78,973.85 | ($1,189.75) |

\* STIPULATED FIGURES

\*\* The Court finds that property left by Mohawk was stored at the Beaver Mill for 183 days or 44.6% of the year.

5. *See, e.g., American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.*, 280 F.2d 119 (2d Cir.1960); *In re Peninsula Gunite, Inc.*, 24 B.R. 593 (Bankr. 9th Cir.1983); *In re Cardinal Export Corp.*, 30 B.R. 682 (Bankr.E.D. N.Y.1983); *In The Matter of Theatre Holding Corp.*, 22 B.R. 884 (Bankr.S.D.N.Y.1982); *In re Rhymes, Inc.* 14 B.R. 807 (Bankr.D.Conn.1981).

6. *See, e.g., Diversified Services, Inc. v. Harralson*, 369 F.2d 93 (5th Cir.1966); *In Re Millard's, Inc.*, 41 F.2d 498 (7th Cir.1930); *Dayton Hydraulic Co. v. Felsenthall*, 116 F. 961 (6th Cir.1902); *In The Matter of International Storage Corp.*, 41 B.R. 808 (Bankr.E.D.Wis.1984); *In re GHR Energy Corp.*, 41 B.R. 668 (Bankr.D.Mass.1984); *In re Mastercraft Record Plating, Inc.*, 32 B.R. 112 (Bankr.S.D.N.Y.1983); *In re Royal International Corp.*, 30 B.R. 750 (Bankr.W.D.Ky.1983); *In The Matter of Fred Sanders Co.*, 22 B.R. 902 (Bankr. E.D.Mich.1982).

# 413

The Court finds that neither Related nor Mohawk presented credible evidence as to the fair rental value per square foot of the space utilized by the debtor during either the Manufacturing Period or the Storage Period. The Debtor introduced no expert testimony, relying instead on the testimony of Joseph A. Dolan, Vice President of the EDC. Mr. Dolan testified that the EDC Lease with Related called for an average rent per square foot per year of seventy-five cents. Since the EDC Lease was executed in 1981 and the EDC is a non-profit corporation, this evidence of fair rental value lacks merit. Likewise, Related's expert witness, William T. Finn, a professional appraiser, merely opined as to the fair rental value per square foot of each floor of the Beaver Mill without indicating the amount of space actually occupied by the Debtor on each floor. Counsel for Related was left to argue that $1.50 per square foot, with utilities to be paid by the lessee, was the appropriate rental rate based on Mr. Finn's testimony that the fair rental value of the first floor was $1.75, the second floor $1.50 and the third and fourth floors $1.25.

■ With respect to the Debtor's fair share of utility expenses, Related's witness, Mr. Martin, suggested that 80% of the gas expense and 90% of the electric expense should be paid by the Debtor. Mohawk countered with a figure of 62% for both utility expenses predicated on the percentage of its occupancy of the leased premises. Neither party introduced actual gas or electric bills or persuasive evidence as to the average amounts of these bills per month. The Court finds the testimony of witnesses for both Related and Mohawk relative to utility expenses to be too speculative to warrant serious consideration. As a consequence, the Court, in the absence of convincing evidence to the contrary, concludes that the rate of $1.50 per square foot with utilities to be paid by Related as per the Related Lease and oral agreements is an appropriate and reasonable rental

rate for the Debtor's use and occupancy of the leased premises during the Manufacturing Period (monthly rental rate of $7,206.50 × 12 months divided by the number of square feet occupied, i.e., $86,478/yr. ÷ 57,652 sq. ft. = $1.50/sq. ft./year).

Mohawk attempted to persuade the Court that following its rejection of the Related lease and the subsequent oral agreements it no longer had an interest in the materials left at the Beaver Mill except for miscellaneous items occupying 1500 square feet of space. The former treasurer of Mohawk, John J. Nostley, testified that government procurement contracts provide that the United States Government owns the inventory when progress payments exceed the value of the goods. He opined that progress payments exceeded the value of the goods at the Beaver Mill, thereby permitting the inference that the government, not Mohawk, owned and was responsible for goods left at the Beaver Mill between November 20, 1984 and May 2, 1985. However, the best evidence of who owned the materials at the Beaver Mill—Mohawk's procurement contract with the government—was not introduced into evidence. Therefore, the Court finds that since tents and other items of inventory were not removed from the Beaver Mill until May 2, 1985, as evidenced by bills of lading consigning the goods to Mohawk, the storage and protection provided by Related directly benefitted and protected Mohawk's interest in all of the property left at the Beaver Mill. As a consequence, Related is entitled to the rate of $1.50 per square foot for the entire 57,652 square feet occupied by the Debtor during the Storage Period. Indeed, Mr. Nostley admitted that materials and inventory could be found on all floors of the leased premises after Mohawk ceased operations.

In summary, the Court finds that Related is entitled to an administrative expense for rent in the amount of $58,484.10, $19,914.91 for rent during the Manufacturing Period [7] plus $38,569.19 for rent during the Storage Period.[8]

7. $1.50/sq. ft. × 57,652 sq. ft. = $86,478/yr. × 84% = $72,641.52 less the $52,726.61 sum paid by Mohawk = $19,914.91.

8. $1.50/sq. ft. × 57,652 sq. ft. = $86,478/yr. × 44.6% (183 days ÷ 365 days) = $38,569.19.

## ORDER

In accordance with the above, and in consideration of the record of the case, the administrative claim of Related is allowed in the amount of $58,484.10.

SO ORDERED.