**In re MOHAWK INDUSTRIES, INC., Appellant and Cross Appellee**

**v.**

**RELATED INDUSTRIES, INC., Appellee and Cross Appellant.**

**No. 85–0481–F.**

United States District Court, D. Massachusetts.

Aug. 20, 1986.

Philip Hendel, Joseph Reinhardt, Hendel, Collins & Stocks, Springfield, Mass., for appellant and cross appellee.

Edward Bassett, Mirick, O'Connell, DeMallie, Worcester, Mass., for appellee and cross appellant.

## MEMORANDUM AND ORDER

FREEDMAN, District Judge.

This is an appeal and cross appeal from a final order of the United States Bankruptcy Court for the District of Massachusetts. This Court possesses appellate jurisdiction pursuant to 28 U.S.C. § 158(a) and Bankruptcy Rule 8013. For the reasons stated below, this Court will affirm in part and vacate in part the Bankruptcy Court's decision, and will remand for further consideration.[1]

## I. BACKGROUND

In 1981 Related Industries, Inc. ("Related") entered into a lease with the Economic Development Commission for approximately 93,000 square feet of factory space on four floors at 189 Beaver Street, North Adams, Massachusetts ("Beaver Mill"). In January 1983 Mohawk Industries, Inc. ("Mohawk") entered into a written lease with Related for the use of 27,359 square feet at Beaver Mill. Mohawk used this space to manufacture tents. Mohawk and Related subsequently entered into oral agreements to rent additional space at Beaver Mill.

On January 13, 1984 Mohawk filed a petition for bankruptcy under Chapter 11; as of that date, Mohawk was renting 57,-652 square feet at Beaver Mill. Mohawk rejected its lease and subsequent oral agreements with Related, effective October 31, 1984. The Bankruptcy Court approved Mohawk's rejection on November 20, 1984. On that date, Mohawk ceased its manufacturing operations at Beaver Mill. From November 20, 1984 to May 2, 1985 Mohawk continued to use the leased premises, but only for storage of its equipment and inventory.

Related requested the Bankruptcy Court to allow it a first priority administrative expense as a result of Mohawk's use of the Beaver Mill premises, pursuant to sections 503 and 507 of the Bankruptcy Code.[2] Related sought recovery for the fair rental value, including utilities, of the premises for two periods: January 13, 1984 to November 20, 1984 (the so-called "Manufacturing Period"), and November 20, 1984 to May 2, 1985 (the so-called "Storage Period"). Mohawk admitted that Related was entitled to a first priority administrative expense; thus, the only issue before the Bankruptcy Court was the amount of the

---

1. Appellant has requested oral argument; however, the Court finds oral argument unnecessary. *See* Bankruptcy Rule 8012(2), (3).

2. Section 503 of the Bankruptcy Code, 11 U.S.C. § 503, provides for allowance of administrative expenses. It states, in relevant part:

(b) After notice and hearing, there shall be allowed, administrative expenses ... including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

Section 507 of the Bankruptcy Code, 11 U.S.C. § 507, provides the priorities of expenses and claims. It states, in relevant part:

(a) The following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under section 503(b) of this title....

administrative expenses owed to Related by Mohawk.

The Bankruptcy Court found that Related was entitled to administrative expenses in the amount of $19,914.91 for the Manufacturing Period, and in the amount of $38,569.19 for the Storage Period, making a total of $58,484.10. Mohawk appeals from the Bankruptcy Court's calculation of the Storage Period administrative expense; Related cross appeals from the Bankruptcy Court's calculation of the Manufacturing Period administrative expense.

## II. ANALYSIS

### A.

■ There are two lines of cases which address the determination of the reasonable value of a lessor's administrative expense for the use and occupancy of leased premises by a debtor. One line of cases restricts a lessor's claim according to the debtor's actual use of the leased property. *E.g., In re United Cigar Stores Co. of America,* 69 F.2d 513 (2d Cir.), *cert. denied,* 293 U.S. 566, 55 S.Ct. 76, 79 L.Ed. 665 (1934). The other line of cases values the lessor's claim without regard to the debtor's actual use of the leased premises. *E.g., Kneeland v. The American Loan and Trust Company of Boston,* 136 U.S. 89, 10 S.Ct. 950, 34 L.Ed. 379 (1890).

The Bankruptcy Court applied the *Kneeland* rule to calculate the administrative expense due for the Storage Period. Mohawk argues on appeal that the *United Cigar* rule should apply. I agree with the Bankruptcy Court that the *Kneeland* rule is the better approach.[3] *See In re Energy Resources Co., Inc.,* 47 B.R. 337, 338–39 (Bankr.D.Mass.1985); *In re GHR Energy Corp.,* 41 B.R. 668, 670–72 (Bankr.D.Mass. 1984). *In re Fred Sanders Co.,* 22 B.R. 902, 905–06 (Bankr.E.D.Mich.1982).

### B.

■ Related and Mohawk also dispute the fair rental value of the leased premises and Mohawk's share of the utility expenses. The Bankruptcy Court found that neither party had presented credible evidence of these two figures. In the absence of convincing evidence to the contrary, the Bankruptcy court presumed that the terms set forth in the parties' written 1983 lease and subsequent oral agreements were reasonable. These terms, the Bankruptcy Court determined,[4] were $1.50 per square foot per year, with *Related,* not Mohawk, responsible for utility expenses.

Related argues on cross appeal that these findings are clearly erroneous, and must be rejected. *See* Bankruptcy Rule 8013. A factual finding is clearly erroneous when a reviewing court is left with the definite and firm conviction that a mistake has been made. *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518, 528 (1985). For the following reasons, I hold that the Bankruptcy Court's determination that the fair market value of the leased premises was $1.50 per square foot per year, with Related liable for utility expenses, was indeed clearly erroneous.

First and foremost, this finding directly and unexplicably contradicts the Bankruptcy Court's own analysis of the evidence:

Related's witness Joseph Martin, President of Related, admitted the terms of the lease in his testimony about an April 11, 1984 meeting attended by executives of Related, Mohawk and Cecile Industries, Inc. ("Cecile") the company in whose name the gas and electric utilities used by Mohawk were listed. At that meeting, which was called to discuss expenses at the Beaver Mill, Martin suggested $2.85 per square foot per year as a fair and reasonable rental rate with utilities. Implicit in this figure is $6,500 per month for utilities, a figure corrobo-

---

**3.** It would make no difference to this case even if *United Cigar* applied, because the Bankruptcy Court specifically found that Mohawk used all 57,652 square feet of the premises throughout the Storage Period.

**4.** Unfortunately, the actual written lease was not introduced into evidence.

rated by the testimony of John J. Miller, President of Cecile, and $7,206.50 per month reserved by the lease and oral agreements ($7,206.50 + $6,500.00 = $13,706.50/mo. × 12 mo. = $164,478.00/yr. ÷ 57,652 square ft. = $2.85/square ft./yr.). Appendix at 53 n. 3.

Second, the Bankruptcy Court gave no effect to Mohawk's admission that it was liable for (at least) 62% of the utility expenses (Hearing Transcript at 23), on the ground that neither party had introduced actual utility bills or persuasive evidence of the average monthly utility bills. Yet the parties had stipulated that Related had incurred liability for post-petition gas usage in at least the amount of $17,576.04, and had stipulated that Related had made payments for post-petition electrical usage in the amount of $6,022.51. Stipulation of Facts 4 and 5, Appendix at 30–31.

Third, the Bankruptcy Court found it significant that Related did not dispute the terms of the lease and subsequent oral agreements during the hearing. But the terms of the lease and oral agreement were not the subject of *any* testimony at the hearing. Moreover, the Bankruptcy Court inadvertently overlooked Related's clear assertion in its Motion (Adversarial) for Order Directing Debtor in Possession to Assume or Reject Leases and for Adequate Protection and Request for Hearing that "Mohawk is responsible to pay for utilities" under the 1983 lease. Appendix at 2.

Fourth, the Bankruptcy Court disregarded the testimony of Related's expert witness as to the fair rental value per square foot of each of the four floors leased by Mohawk at Beaver Mill, because the witness did not testify as to the actual amount of space Mohawk occupied on each floor. However, the amount of space Mohawk occupied on each floor is clearly indicated in the record. *See* Appendix at 2–3.

Finally, the Bankruptcy Court's use of the same rate to calculate the administrative expenses due for both the Manufacturing Period, during which Related incurred over twenty thousand dollars in utility expenses, and the Storage Period, during which Related incurred zero utility expense, is plainly inequitable.

### III. CONCLUSION

The Bankruptcy Court properly held that the *Kneeland* rule should be used to valuate Related's administrative claim for the Storage Period. However, the Bankruptcy Court's finding that the fair rental value of the leased premises is $1.50 per square foot per year with Related responsible for utilities is clearly erroneous. The Court therefore VACATES the Bankruptcy Court's calculation of Related's administrative expenses for both the Manufacturing and Storage Periods, and REMANDS this case to the Bankruptcy Court for further proceedings consistent with this decision.

Each party shall bear its own costs.

It is So Ordered.