**In re F.A. POTTS & CO.,
INC., et al., Debtors.**

**Civ. A. No. 91–7571.**

United States District Court,
E.D. Pennsylvania.

Feb. 4, 1992.

Jeffrey Kurtzman, Klehr, Harrison, Harvey, Branzburg, Ellers, Philadelphia, Pa., for Karl and Wilma Goos.

Tammi J. Lipsky, Adelman, Lavine, Gold & Levin, Philadelphia, Pa., for Creditors Committee.

Earl T. Stamm, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for F.A. Potts & Co., Inc.

Frederic J. Baker, Philadelphia, Pa., Asst. U.S. Trustee.

## MEMORANDUM

GILES, District Judge.

Appellants Karl and Wilma Goos ("the Gooses") seek to collect post-petition rent payments from F.A. Potts & Co., Inc., and GNP Land Company ("Debtors") for the period May 1984 through April 1990. The Gooses filed a motion in bankruptcy court, arguing that these payments should be allowed as an administrative expense pursuant to 11 U.S.C. § 503(b)(1)(A). The bankruptcy court denied the Gooses' motion, and they appealed to this court pursuant to 28 U.S.C. § 158. For the reasons set forth below, this court will reverse and remand for a determination of the fair rental value of the Gooses' property for the 1984–1990 period.

## I. BACKGROUND

The Gooses co-own a two-story building in Pottsville, Pennsylvania. Debtors, who were in the coal mining business, began leasing the second floor of this building sometime before they filed for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 et seq., late in 1981.[1] Prior to filing for bankruptcy Debtors paid rent of $1,500 per month for their office space. Subsequent to filing their joint Chapter 11 petition, Debtors' rent was reduced to $1,000 per month.

Debtors continued to make rental payments through April 1984, at which time their surface coal mining operations ceased. Transcript of Bankruptcy Court Hearing (July 25, 1991) ("Transcript"), 6. Debtors occupied the Building for six more years, carrying on a limited amount of business. Though surface mining had ceased, "other mining operations on the property continued." Transcript, 6. Specifically, Debtors continued to administer about sixteen "mining operations of the various leaseholders on [Debtors'] property." Transcript, 7. During this period Debtors maintained an office staff of five or six employees and continued to employ four field workers, who on occasion used the office to do research, keep records, and make copies. Transcript, 9, 18–19. Debtors continued to store their business documents in the office, and used the office space for various meetings and research necessitated by the process of winding down, preparing a bankruptcy reorganization plan, and facilitating the sale of the businesses. Transcript, 10–13.

Debtors' continued operations during the 1984–1990 time period enabled them to generate revenue in excess of $1,000,000 per year. Transcript, 8. This income allowed Debtors to build up a cash reserve of $1,000,000, which was put up as security for possible mine reclamations claims when Debtors sold their assets for $7,750,000 in April 1990. Transcript, 1990.

Despite Debtors' continued use of the Pottstown office, the bankruptcy court ruled that the Gooses were not entitled to rent payments as an administrative expense. It issued a brief order, dated November 6, 1991, denying the motion on the ground that:

> debtor's use of the leased premises during the period commencing May 1, 1984 and ending April 30, 1990 was not necessary or reasonable given the facts that during this period of time debtor had ceased its mining operations and had only four to six office employees and Goos had used the leased premises for other business purposes and rental of the premises was not necessary or reasonable to accommodate either debtor's four field employees or potential purchasers since neither of these persons used the leased premises on a regular basis.

The Gooses appealed this order and reassert their right to collect rent as an administrative expense before this court.

---

1. Transcript of Bankruptcy Court Hearing (July 25, 1991) ("Transcript"), 3, 20–21. This and all other citations to the Transcript refer to uncontroverted testimony offered by Mr. Goos.

## II. DISCUSSION

Section 503 of Title 11 of the Bankruptcy Code is entitled "Allowance of administrative expense". 11 U.S.C. § 503. This section specifies those expenses which may be paid from the debtor's estate without regard to amounts owing to the estate's various creditors. These allowances facilitate the maintenance of the estate in the best shape possible to meet creditors' claims against it. Among these allowances are "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A). Included among the costs and expenses referred to in this section is the rent which a debtor must pay to its landlord if it does not have property of its own. *Zagata Fabricators v. Superior Air Products*, 893 F.2d 624 (3d Cir.1990).

According to the bankruptcy court's order denying the Gooses' motion, there are four factual findings upon which the Bankruptcy Court based its ruling that Debtors' rental payments do not qualify under § 503: (1) Debtor had ceased its mining operations as of April 1984, (2) Debtor had only four to six office employees, (3) the Gooses had used the leased premises for other business purposes, and (4) neither Debtor's four field employees nor potential purchasers used the leased premises on a regular basis.

■ This court may only overrule factual findings if they are clearly erroneous. As for the legal conclusions to be drawn therefrom, however, this Court has plenary review. *Century Glove, Inc. v. First American Bank of New York*, 860 F.2d 94, 100 (3d Cir.1988). The determination that Debtors' rental payments do not qualify as an administrative expense under § 503 is one such legal conclusion.

■ upon the record before it, this court rules that factual findings (1) and (3) are clearly erroneous. As men-tioned above, Mr. Goos testified during the Bankruptcy Court hearing that Debtors continued a limited amount of mining operations after April 1984, even though surface mining ceased as of that date. Transcript, 6–7. This testimony was uncontested. Thus, because factual finding (1) states that Debtor had ceased *all* of its mining operations, and not just its surface mining operations, that finding is incorrect.

■ Factual finding (3) is likewise clearly erroneous. The only testimony on the record concerning other uses of the premises is the statement, made by Mr. Goos, that his son and his son's partner used the first floor of the building to run a car dealership. Transcript, 20–21. Yet Mr. Goos testified that "[i]t has always been an automobile business downstairs." Transcript, 21. Debtors, on the other hand, leased only the second floor office space. Transcript, 6. There is no evidence that the premises leased to Debtors was used in connection with this car dealership, nor is there any other evidence of use of the second floor office space by anyone other than Debtors.

■ ■ corrected, the only facts which arguably support a ruling adverse to the Gooses are that surface mining operations ceased in April 1984, that Debtors employed only four to six office employees thereafter,[2] and that neither Debtors' four field employees nor potential purchasers used the leased premises on a regular basis. As a matter of law, however, these facts do not undermine the general proposition, as set forth in *Zagata*, that a debtor's rental payments to its landord are allowable as an administrative expense. The bankruptcy court denied the Gooses' motion for an allowance because it perceived sharply reduced use of the property, use which it did not deem to be "necessary or reasonable." However, case law does not support this reading of § 503.

■ In ruling that § 503 makes an allowance for the "reasonable value for the use

---

**2.** While the record indicates that there were always at least five office employees, it does appear that both of the two secretaries began working half-time sometime between 1984 and 1990. Transcript, 20.

and occupancy of the landlord's property," *Zagata*, 893 F.2d at 627, the third circuit cites with approval the case of *In re Mohawk Industries, Inc.*, 54 B.R. 409 (Bankr. D.Mass.1985). As noted in *Mohawk:*

> Two lines of cases have developed with respect to determining the "reasonable value of use and occupancy". One line of cases, led by *In re United Cigar Stores Company of America*, 69 F.2d 513 (2d Cir.1934), *cert. denied sub now., Reisenwebers, Inc. v. Irving Trust Co.*, 293 U.S. 566, 55 S.Ct. 76, 79 L.Ed. 665 (1934), restricts a lessor's claim to the value of the debtor's actual use of property. The other line of cases, led by *Kneeland v. American Loan and Trust Co.*, 136 U.S. 89, 10 S.Ct. 950, 34 L.Ed. 379 (1890), measures the landlord's claim by the reasonable value of the leased property without regard to the actual use by the debtor. Two recent Massachusetts cases, *In re Energy Resources Co., Inc.*, 47 B.R. 337 (Bankr.D.Mass.1985), and *In re GHR Energy Corp.*, 41 B.R. 668 (Bankr.D.Mass.1984), clearly indicate that Massachusetts' bankruptcy courts, relying specifically on *In The Matter of Fred Sanders Co., Inc.*, 22 B.R. 902 (Bankr.E.D.Mich.1982), subscribe to the *Kneeland* line of cases.

*Mohawk*, 54 B.R. at 411–12 (footnotes omitted). Generally, courts in the First, Fifth, Sixth and Seventh Circuits have followed the *Kneeland* ("objective") approach, while courts in the Second and Ninth Circuits have followed the *In re United Cigar Stores* ("subjective") approach.

While the third circuit did not directly confront the issue of these alternative approaches in *Zagata*, it did cite with approval to *Mohawk*, in which the Bankruptcy Court adopted the objective approach to determining fair rental value. In this court's view, *Zagata's* favorable reference to *Mohawk* counsels the view that the third circuit would similarly follow the objective approach to valuation. The objective approach has been followed by a greater number of circuits and a greater number of courts,[3] and where courts have explicitly examined the two approaches, they have, as in *Mohawk*, chosen in favor of the objective approach.[4] They have done so in part because of the vulnerable position of the lessor, who, unlike other creditors, is obliged to suffer continued control of his property by the debtor.[5] The subjective approach also offers considerable practical disadvantages, as it requires the court to determine what percentage of lease property is "actually" being used. For these reasons, this court will apply the objective approach to the dispute between Debtors and their landlord, the Gooses.

Under the objective approach, the lessor is entitled to collect the fair rental value of the leased premises so long as the debtor is occupying the leased property and using it to help preserve the estate. The leased premises are considered necessary even if they are not being put to the same use as they were prior to the debtor filing for bankruptcy. As stated in *Diversified Services, Inc. v. Harralson*, 369 F.2d 93, 95 (5th Cir.1966), the court "should not consider that the [debtor] has used only for storage purposes property that had been occupied by a going business." In the *Mohawk* case, the court determined the fair rental value of the premises and applied that rate both to the period when the debtor had still been manufacturing its product and to the subsequent period of winding down the business, when space was used primarily for storage. *Mohawk*, 54 B.R. at 413.

Likewise, the Gooses are entitled to the fair rental value of their property notwithstanding its altered use during the 1984–1990 period. Though limited, that

---

3. For those courts following the objective approach, *see In re Mohawk Industries, Inc.*, 54 B.R. 409, 412 & n. 6 (Bankr.D.Mass.1985), and *In re International Storage Corporation*, 41 B.R. 808, 809 & n. 5 (Bankr.E.D.Wis.1984). For those courts following the subjective approach, *see Mohawk*, 54 B.R. at 412 & n. 5, and *International Storage*, 41 B.R. at 808 & n. 4.

4. *See, e.g., In re International Storage Corporation*, 41 B.R. 808 (Bankr.E.D.Wis.1984), and *In The Matter of Fred Sanders Co.*, 22 B.R. 902 (Bankr.E.D.Mich.1982).

5. *See In Re Fred Sanders Co.*, 22 B.R. 902 (Bankr.E.D.Mich.1982).

use was legitimate and was necessary to the preservation of the estate. The office space was used to store business records, to facilitate the bankruptcy reorganization and sale of the business, and also to maintain a certain level, albeit reduced, of mining operations. Crediting the lessor with an allowance for such rental use is dictated by *Mohawk's* objective approach, which is now used by most courts and which was impliedly adopted by the Third Circuit in *Zagata.*[6]

■ Having ruled that the Gooses must be allowed an administrative expense representing the fair rental value of the leased premises for the 1984–1990 period, this court shall remand for a determination of such fair rental value. Such value is not necessarily fixed by the lease, for the lessor is only entitled to a "a reasonable value" for use and occupancy under § 503. *Zagata,* 893 F.2d at 627. It is nonetheless clear that the rental value fixed in the lease will control, unless there is convincing evidence that such rental rate is unreasonable. *Mohawk,* 54 B.R. at 412 (citing to cases in support of this proposition). Thus, unless there is convincing evidence to the contrary, the bankruptcy court should find that the Gooses are entitled to the $1,000–per–month payments which they seek.

---

6. It is worth noting that even the application of the subjective approach would not justify the bankruptcy court's order denying any allowance whatsoever, for the Gooses would still be entitled to *some* allowance. Those courts applying the subjective approach have in large part denied rental payment as an administrative expense where the tenant maintained control of the leased premises but was *not even occupying* them. *See American Anthracite & Bituminous Coal Corp. v. Arrivabene,* 280 F.2d 119 (2d Cir. 1960); *In re Cardinal Export Corp.,* 30 B.R. 682 (Bankr.E.D.N.Y.1983); *In the Matter of Theatre Holding Corp.,* 22 B.R. 884 (Bankr.S.D.N.Y. 1982); *In re Rhymes, Inc.,* 14 B.R. 807 (Bankr. D.Conn.1981). In other words, courts applying the subjective test have looked more to the *quantity* than to the *quality* of rental use. Thus, application of the subjective approach might yield the Gooses most, or even all, of what they would receive under the objective approach, since there is no indication that a discrete portion of the leased premises went totally unused.