## In re DAVENPORT BEVERAGE CORPORATION, Debtor.

### No. 12–43583–MSH.

United States Bankruptcy Court, D. Massachusetts, Central Division.

Feb. 12, 2014.

Robert P. Jachowicz, Esq., Mayer, Antonellis, Jachowicz & Haranas, LLP, Framingham, MA, for Theodore Cohen.

Edmund L. Myers, Esq., Mendon, MA, for Davenport Beverage Corporation.

## MEMORANDUM OF DECISION ON MOTION OF THEODORE COHEN FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIM

MELVIN S. HOFFMAN, Bankruptcy Judge.

This matter is before me on the motion of Theodore Cohen for allowance of an administrative expense claim for amounts allegedly due him by Davenport Beverage Corporation, the debtor in this liquidating chapter 11 case, under a commercial property lease. Davenport opposes allowance of any administrative expense claim in favor of Mr. Cohen.

The facts relevant to this dispute, drawn from the uncontested pleadings of the parties, including the affidavit of Paul D. Everett, III, president of Davenport, are as follows.

Davenport owned and operated the Pop N' Kork liquor store in Mr. Cohen's building in Mendon, Massachusetts under a ten-year lease. The lease commencement date was January 1, 1993. Under the lease, Davenport agreed to pay Mr. Cohen base rent according to a rent schedule, plus additional rent for any increases in real estate taxes prorated to Davenport's share (63.6%) of the total space in Mr. Cohen's building. In addition to rent, Davenport agreed to pay for any repairs to the building's roof and its percentage share of repairs and maintenance of the parking lot and septic system. The lease contained a renewal option for an additional ten-year term which Davenport exercised thereby extending the lease term to December 31, 2013. In 2006, Davenport and Mr. Cohen entered into a lease modification agreement calling for Davenport to pay a ten percent late charge for any overdue rent

payments and Mr. Cohen's reasonable costs and fees, including attorneys' fees, were he to successfully enforce his rights under the lease.

Sometime in 2012, Davenport defaulted on its obligation to make lease payments. In September 2012, Mr. Cohen commenced a summary process eviction proceeding against Davenport in state court. On October 4, 2012, the day the summary process eviction trial was to occur, Davenport commenced this case by filing a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (11 U.S.C. § 101 *et seq.*). As a result, the eviction trial did not proceed.

On October 19, 2013, Mr. Cohen filed in this case a motion for relief from the automatic stay to continue his state court eviction proceeding against Davenport. In his motion Mr. Cohen alleged that the lease had been terminated pre-petition but at the hearing on his motion he seemed to back away from that position by expressing a willingness to accept post-petition lease payments. In any event, I denied Mr. Cohen's motion and implicit in that ruling was the presumption that the lease had not been terminated pre-petition.

On January 13, 2013, I entered an order allowing Davenport to sell substantially all of its assets. The order included findings that Davenport's lease was assignable and that the buyer had presented adequate assurance of its ability to perform under the lease. The order also provided that in the event the buyer and Mr. Cohen executed a new store lease, Davenport's lease would be deemed rejected. The buyer took possession of the Mendon premises in June 2013, and in fact entered into a new lease with Mr. Cohen.

On February 5, 2013, Davenport and Mr. Cohen filed a joint motion to extend the time to assume or reject their lease (another indication that Mr. Cohen had

abandoned his position that the lease had been terminated pre-petition) for an additional 90 days beyond the 120 day time period automatically accorded debtors pursuant to Bankruptcy Code § 365(d)(4)(A)(i).[1] The motion was denied, however, because it was filed four days after the end of the 120 day period and was thus untimely.[2] As a result, the store lease was deemed rejected effective at midnight on February 1, 2013, the 120th day after Davenport filed its bankruptcy petition. On April 5, 2013, Mr. Cohen timely filed a proof of claim asserting an unsecured pre-petition claim against Davenport in the amount of $59,407.43. Of this sum, $53,505.80 represented unpaid rent for the four months from July through October 2012, at the rate of $13,376.45 per month. No objection to the proof of claim was interposed.

On October 15, 2013, Davenport's liquidating plan of reorganization was confirmed. Pursuant to the plan all pre-petition unsecured claims, including Mr. Cohen's, were paid in full. Three days after confirmation, Mr. Cohen filed his motion for allowance of an administrative expense claim in the amount of $51,752.47.

Mr. Cohen's administrative expense claim consists of payment late charges of $9,363.55 (10% of seven late lease payments for the months of November 2012 through May 2013), property repairs and maintenance charges of $38,212.47 (roof repairs—$27,000, asphalt repairs—$2,400, septic system pumping—$675.47 and snow plowing—$8,137), and attorneys' fees of $10,800. These items total $58,376.02. As explained below, the claim of $51,752.47 reflects a credit for overpaid rent. The parties agree that Davenport remained in possession of the Mendon premises through May 2013, and that through a combination of payments (albeit late) and application of Davenport's security deposit, base rent under the lease of $13,376.45 per month was paid in full. In fact, after applying the $20,000 security deposit to rent payments, the total received by Mr. Cohen exceeded base rent for the period from November 2012 through May 2013 by $6,623.55. This amount was credited by Mr. Cohen against the other charges comprising his administrative expense claim which is why the claim is less than the total charges.

The parties also agree that the roof was repaired sometime after June 2013, when the buyer had taken possession of the store under a new lease with Mr. Cohen. An exhibit to Mr. Cohen's motion containing an itemization of the charges comprising his claim suggests that, like the roof repair, the asphalt repair of the parking lot and the septic system pumping occurred after the buyer had taken possession of Davenport's store. Mr. Cohen's attorney stated at oral argument that the attorneys' fees component of the administrative expense claim represented fees in-

---

1. Bankruptcy Code § 365(d)(4)(A) provides: Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of—
(i) the date that is 120 days after the date of the order for relief; or

(ii) the date of the entry of an order confirming a plan.

2. Bankruptcy Code § 365(d)(4)(B)(i) permits a court to "extend the period determined under subparagraph (A), *prior to the expiration of the 120–day period*, for 90 days upon the motion of the trustee or lessor for cause." (emphasis supplied)

curred in connection with the state court eviction proceeding.

According to Mr. Cohen's itemization, the snow plowing charges were incurred in December 2012 ($1,975), January 2013 ($790) and February 2013 ($5,372), prior to the buyer's taking possession of the store and entering into a new lease with Mr. Cohen.

In the affidavit of Davenport's president, Paul D. Everett, III, filed in support of Davenport's opposition to Mr. Cohen's motion, he stated that when he received Mr. Cohen's bill for snow plowing he objected that the bill was outrageously high because Mr. Cohen's plow contractor charged $250 per inch of snow when the going rate was between $20 and $25 per inch, which was what Davenport had paid in the past. Mr. Everett stated that he immediately hired his own contractor to take over snow plowing for the remainder of the season at the $25 per inch rate. Mr. Everett also stated in his affidavit that he was never asked by Mr. Cohen to repair the roof or the parking lot asphalt.

The dispute here is straightforward. Mr. Cohen has asserted a claim for administrative expenses for non-rental charges under his lease with Davenport (late charges, repairs and maintenance costs and attorneys' fees). Davenport argues that these items do not qualify for administrative expense treatment.

 The allowance of administrative expense claims is governed by statute. Bankruptcy Code § 503 provides in relevant part:

(a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate. . . .

In this circuit the leading case on the application of § 503 is *Woburn Assoc. v. Kahn (In re Hemingway Transport, Inc.),* 954 F.2d 1, 5 (1st Cir.1992), in which the court set out the criteria for an allowable administrative expense claim as follows:

[A] request for priority payment of an administrative expense pursuant to Bankruptcy Code § 503(a) may qualify if (1) the right to payment arose from a postpetition transaction with the debtor estate, rather than from a prepetition transaction with the debtor, and (2) the consideration supporting the right to payment was beneficial to the estate of the debtor.

*See also In re Diomed Inc.,* 394 B.R. 260, 265–66 (Bankr.D.Mass.2008). As the party asserting the administrative claim, Mr. Cohen bears the burden of demonstrating the entitlement of his claim to such treatment. *Hemingway Transport,* 954 F.2d at 5.

A resolution of the parties' dispute would thus appear to require the application of § 503(b) along with the relevant case interpretive gloss to the facts at hand. The parties have different ideas, however. Mr. Cohen and Davenport have become bogged down in arguments over whether the lease was terminated pre-petition and whether the determination of Mr. Cohen's administrative expense claim is affected by Bankruptcy Code § 502(b)(6) governing claims of a lessor for damages resulting from the early termination of a lease.[3]

---

**3.** Bankruptcy Code § 502(b)(6) provides that except for certain claims not relevant here, if

a party objects to a claim:

Demonstrating a shocking lack of fidelity to positions taken on the record in this case, each party has both asserted and denied that the lease was terminated pre-petition. Mr. Cohen, claiming early in the case in his stay relief motion that the lease had been terminated pre-petition, has ended up reversing himself, maintaining not just that the lease did not terminate pre-petition but that Davenport never rejected it post-petition and so it has never been terminated. Davenport flip-flops with equal audacity maintaining at the outset of the case that the lease was not terminated pre-petition only to embrace the claim of pre-petition termination now.

The parties appear to have forgotten their joint motion to extend the time to assume or reject the lease, which reflects a meeting of the minds that the lease had not been terminated pre-petition, and my denial of that motion because it was too late by four days as the lease was deemed rejected as a matter of law as of midnight on February 1, 2013.

As to the applicability of § 502(b)(6) to this matter, the motion before me seeks allowance of an administrative expense claim under § 503(b)(1) not a rejection damage claim under § 502(b)(6). The parties' bickering over whether or when the lease was rejected (totally oblivious to my prior ruling) and what is the proper measure of § 502(b)(6) damages is nothing more than a sideshow.

■■■■■ The simple question is, should late charges, repairs and maintenance costs and attorneys' fees which Mr. Cohen asserts Davenport owes him under the lease be accorded administrative expense status under Bankruptcy Code § 503(b)? To answer this question it is necessary to distinguish between claims pre-dating lease rejection and those arising thereafter. This dichotomy is the result of § 365(d)(3) which was added to the Bankruptcy Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984 "as an attempt to alleviate the unique financial strains the Code placed upon the commercial lessor." *In re PYXSYS Corp.,* 288 B.R. 309, 312 (Bankr.D.Mass.2003) (footnote omitted).[4] This provision requires a debtor or trustee in a bankruptcy case to perform all obligations under a lease until the lease is rejected. In explaining the effect of § 365(d)(3) on post-petition administrative expense claims of landlords, Judge Boroff noted in *PYXSYS:*

> [T]here is at least general agreement on three changes to the treatment of these claims wrought by § 365(d)(3). First, there is little dispute that the clause

... the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—

(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—

(i) the date of the filing of the petition; and

(ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

(B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates. . . .

4. Section 365(d)(3) provides in relevant part the "[t]he trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. . . ."

"notwithstanding section 503(b)(1) of this title" eliminates the requirement for an order expressly authorizing payment of an administrative rent claim. 11 U.S.C. § 365(d)(3).... Second, many courts have held that same clause to eliminate the "benefits test" of 503(b)(1) and view § 365(d)(3) as having no threshold requirement that administrative rent claims reflect an objective benefit to the estate. Third, most courts have agreed that the clause has the further and corollary effect of allowing landlords to assert claims under § 365(d)(3) valued according to the lease terms and not according to a reasonable value based upon benefit to the estate.

*Id.* at 313–14 (citations and footnote omitted). A majority of courts considering this issue concur with the approach articulated in *PYXSYS.* Elizabeth Lea Black, *What are "Administrative Expenses" Under § 503(b) of Bankruptcy Code (11 U.S.C.A. § 503(b)) Granted First Priority for Payment Pursuant to § 507(a)(1) of Code (11 U.S.C.A. § 507(a)(1)),* 140 A.L.R. Fed. 1, § 10[a] (original published 1997).

■ Applying these principles to Mr. Cohen's claim means bifurcating it into claims arising prior to rejection of his lease and claims arising after rejection. Thus Mr. Cohen's entitlement to payment under his lease for the period November 1, 2012, through February 1, 2013, is governed by § 365(d)(3). Davenport was obligated to pay the late charges and expenses incurred during this period without regard to whether they conferred any benefit on the estate. *In re MS Freight Distribution, Inc.,* 172 B.R. 976, 978 (Bankr. W.D.Wash.1994) (noting that when late fees are provided for in lease, most courts permit a lessor to receive such fees for the period prior to rejection of lease in accordance with § 365(d)(3)). Mr. Cohen is, therefore, entitled to recover late charges

totaling $4,012.95, or $1,337.65 for the months of November and December 2012 and January 2013. He is also entitled to recover snow plowing charges incurred by him in December 2012 and January 2013 totaling $2,765.00. The fact that the plow charges are unreasonable is not relevant to the pre-rejection portion of Mr. Cohen's claim. Davenport's obligation under the lease was to pay, or in this case, reimburse Mr. Cohen for its share of the plowing charges incurred by him.

■ The portion of Mr. Cohen's claim attributable to the post-rejection period does not enjoy the elevated status conferred by § 365(d)(3). Instead, Bankruptcy Code § 503(b), with its requirements that an expense be actual and necessary and of benefit to the estate, applies. There can be no doubt that Davenport's post-petition, post-rejection (from February 2 through May 2013) use of Mr. Cohen's property to run its business conferred a tangible economic benefit upon the estate. In determining an appropriate use and occupancy rate for administrative expense purposes with respect to rental real estate when a lease has been rejected, the rent called for under the lease is an appropriate yardstick. *In re Energy Resources Co.,* 47 B.R. 337, 339 (Bankr. D.Mass.1985) (the reasonable value for the use of the premises is the lease contract rate unless there is evidence that the rate is unreasonable); *In re GHR Energy Corp.,* 41 B.R. 668 (Bankr.D.Mass.1984). Thus, Mr. Cohen would be entitled to rent for the period February 2, 2013, through May 31, 2013, at the rate of $13,376.45 per month as called for under the lease and he in fact received that rent. The late charges for this period, however, are another matter. There is no basis upon which to rest a finding that late charges provided any benefit to the estate. Hence they are not allowable. *MS Freight Dis-*

*tribution,* 172 B.R. at 978 (lessor whose lease was rejected not entitled to post-rejection interest, late fees or legal fees as administrative expense claim as they were not actual and necessary costs of preserving the estate). As for snow plowing expenses incurred in February 2013 after lease rejection,[5] while plowing conferred a benefit on Davenport by allowing customers access to its store, Davenport has demonstrated that no more than $25 per inch was the going rate at the time and thus the tenfold increase sought by Mr. Cohen is unreasonable. Whether Mr. Cohen actually paid $250 per inch of snowfall as he maintains is not the issue. Section 503(b) requires the expense to be both actual and necessary. Mr. Cohen's payment of $250 per inch may have been actual but it certainly was not necessary. Assuming a reasonable rate of $25 per inch, Mr. Cohen is entitled to allowance of his administrative expense claim for post-rejection snow plowing in the amount of $537.20.

■ Mr. Cohen makes claims for repair and maintenance expenses on the roof, parking lot and septic system at the Mendon property. The roof repair and (the record strongly suggests) the parking lot and septic system work occurred after Davenport's buyer had completed its purchase and entered into a new lease with Mr. Cohen. In any event, Mr. Cohen, who bears the burden of proof in this matter, has failed to establish that the repairs and maintenance expenses were paid while Davenport was in possession of its store. Applying the requisite preservation-of-the-

estate test mandated by § 503(b) results in the conclusion that the Davenport bankruptcy estate could not possibly have benefitted from this work performed after it no longer occupied the Mendon store. Moreover, there has been no allegation that the buyer of Davenport's assets conditioned its purchase on the physical state of the roof or parking lot or on repair and maintenance work being performed at Davenport's expense, facts which arguably could have justified classifying these post-closing expenses as administrative expenses. The Business Asset Purchase and Sales Agreement between Davenport and its buyer which was attached as an exhibit to Davenport's sale motion, contains representations and warranties and conditions precedent, none of which involved the building's roof, parking lot or septic system. The only parties who benefited from the repairs and maintenance work on these elements appear to have been Mr. Cohen and Davenport's buyer.

■ Similarly, there was no benefit conferred upon or preservation of the bankruptcy estate as a result of Mr. Cohen's incurring legal fees which his counsel conceded were incurred for pre-petition legal work in connection with the uncompleted state court eviction proceeding. Mr. Cohen should have included these attorneys' fees in his pre-petition claim and having chosen not to do so and Davenport's plan having been fully consummated with respect to pre-petition claims, it appears too late for him to do so now.[6]

---

5. I assume the snow plowing charges for February were not incurred on February 1, 2013, the last day before lease rejection. I may take judicial notice of the weather conditions on January 30 through February 1, 2013, as reported by the national weather service. It did not snow on any of those dates. *See* Observed Weather Reports, NATIONAL WEATHER SERVICE FORECAST OFFICE: BOSTON, MA, http://www.nws.

noaa.gov/climate/index.php?wfo=box (under "Product" select "Preliminary Monthly Climate Data"; then under "Location" select "Boston" or "Worcester"; then under "Timeframe" select "Archived Data" and select "January 2013" or "February 2013"; then under "View" click the "Go" button).

6. I take no position on the allowability of such a claim in light of the lease modification

To sum up, the only items comprising Mr. Cohen's claim entitled to administrative expense treatment are:

(i) Late charges from November 2012 through February 1, 2013, totaling $4,012.95;

(ii) Snow plowing charges for December 2012 and January 2013, totaling $2,765.00; and

(iii) Snow plowing charges for February 2013, totaling $537.20;

for a grand total of $7,315.15. Against this amount, however, there must be credited the $6,623.55 rent overpayment received by Mr. Cohen. Accordingly, Mr. Cohen is entitled to an administrative expense claim in this case pursuant to Bankruptcy Code § 503(b)(1) in the amount of $691.60. A separate order shall enter.

provision permitting Mr. Cohen to charge attorneys' fees for *successfully* enforcing his

rights under the lease.